**HIDECA PETROLEUM CORPORATION and Hideca Trading, Inc., Appellants,**

v.

**TAMPIMEX OIL INTERNATIONAL, LTD., Appellee.**

No. 01–86–00255–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 22, 1987.

William L. Bowers, Jr., Dickerson, Hamel, Early & Pennock, Houston, for appellants.

Knox D. Nunnally, Don Jackson, Vinson & Elkins, Houston, for appellee.

Before DUGGAN, HOYT and LEVY, JJ.

## OPINION

LEVY, Justice.

This breach of contract suit arises out of an aborted international crude oil transac-

tion, and involves questions of corporate "alter ego" and negligent performance and misrepresentations.

Robert Sessions, an employee of appellee, Tampimex Oil International, Ltd. ("Tampimex"), as seller, and Vincente Scippa, an employee of appellant, Hideca Petroleum Corporation ("Hideca Petroleum"), as buyer, negotiated for the sale of Dubai crude oil, largely by sending telexes to one another. Scippa signed all telexes, "Vincente Scippa Hideca Petroleum Corp. on behalf of and as instructed only by Hideca Trading, Inc." The trial court found that both Hideca Trading and Hideca Petroleum entered into an oral contract with Tampimex for the purchase of oil, which was confirmed in a telex sent by Tampimex to Hideca Trading, designating only Hideca Trading as the buyer, but addressed to Scippa's attention at the office of Hideca Petroleum.

Tampimex is a subsidiary of Ingram Corporation and a part of a larger international operation that traded in the domestic and international crude oil and petroleum markets. Hideca Petroleum is a Delaware corporation that is owned by Kimpter Company, N.V., a Netherlands Antilles corporation. Hideca Trading is a Cayman Islands corporation owned by Corsaire, Ltd. The Tudela brothers of Caracas, Venezuela, either directly or indirectly, own the majority of the stock of both Kimpter Company, N.V., and Corsaire, Ltd.

Hideca Petroleum had offices at One Riverway in Houston, Texas. Its president and only director was Luis Wolff ("Wolff"). Hideca Trading had offices in Caracas, Venezuela. Wolff and Vincente Scippa were allegedly employees of Hideca Petroleum only and not of Hideca Trading. Hideca Petroleum operated in the domestic crude oil and products markets, and Hideca Trading operated in the international markets.

In early February, 1980, Wolff advised Vincente Scippa that there was a possibility of selling approximately 800,000 barrels of Dubai crude oil (a Middle Eastern grade of petroleum) for Hideca Trading to Amerada Hess Company through a broker, I.T.I.

Scippa then began to look for a source of the crude and in the process contacted Robert Sessions of Tampimex. He also contacted I.T.I. to verify the transaction and proceeded to negotiate the sale to I.T.I. on behalf of Hideca Trading and the purchase from Tampimex. These negotiations are reflected in Sessions' and Scippa's testimony and a series of telexes, the pertinent of which were introduced into evidence.

The transaction failed when Scippa, acting allegedly only for Hideca Trading, was unable to obtain the necessary letters of credit from I.T.I. and discovered that I.T.I. did not in fact have a customer for the Dubai crude oil. Sessions testified that at that time he had already committed Tampimex to purchase the Dubai crude from a supplier, Derby Resources, A.G., ZUG Switzerland ("Derby"). The court determined that a contract existed that was not barred by the statute of frauds because appellee had sent both appellants a telex confirming the oral contract, which appellants did not object to in writing (or orally), despite their knowledge of its contents. The court found, however, that this telex was not meant to be a complete and exclusive statement of the parties' contract. Following a non-jury trial, the court concluded that both Hideca Petroleum and Hideca Trading entered into an oral purchase contract with appellee, and that both appellants breached by their failure to nominate a ship to transport the oil or to obtain the necessary irrevocable letters of credit. The trial court rendered a $1,090,000 judgment jointly and severally against the appellants, and for appellee, with interest, attorney's fees, and costs.

Appellants contest only that portion of the court's judgment that imposes liability against Hideca Petroleum.

The trial court held that Vincente Scippa was an agent with authority to act for Hideca Petroleum, and that Hideca Petroleum was acting with actual authority as an agent for Hideca Trading, an undisclosed or partially disclosed principal. The court based its conclusion on its findings that Hideca Petroleum's actions led Tampimex to reasonably believe that Hideca Petrole-

um and Hideca Trading were, in effect, the same corporation, acting as one contracting entity, and that the intent of all involved in the formation of the contracts was that Hideca Petroleum be responsible thereunder. All parties involved considered and treated both Hideca companies as one contracting party.

The trial court concluded that Hideca Petroleum was the "alter ego" of Hideca Trading, basing its conclusion on findings that Hideca Petroleum's business affairs were indistinguishable from Hideca Trading's affairs and that Hideca Petroleum perpetrated a fraud on Tampimex by operating Hideca Trading as its business conduit.

Finally, the court held that although Hideca Petroleum had a duty to perform its agency contract with reasonable care, and to act as a reasonably prudent oil trader in its dealings with Tampimex, Hideca Petroleum failed to so perform and was negligent, and that such negligence directly caused substantial damage to Tampimex.

Appellants assert six points of error.

In their first point of error, appellants claim that the trial court erred in finding that Hideca Petroleum was a party to, or obligated under, the terms of the contract between Hideca Trading and Tampimex. They base their claim on the argument that the evidence was legally insufficient or, alternatively, that the evidence was factually insufficient, to support the court's finding, causing the finding to be so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.

In reviewing legal insufficiency (or "no evidence") points of error, we must consider only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences that may properly be drawn from that evidence, and disregarding all contrary or conflicting evidence. *King v. Bauer*, 688 S.W.2d 845 (Tex.1985); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Texaco v. Pennzoil*, 729 S.W.2d 768 (Tex.App.—Houston [1st Dist.] 1987, writ pending). A "no evidence" point of error must be sustained if we find a complete absence of evidence of probative force or only a scintilla of such evidence to support the finding, or if the evidence tending to support the finding must be disregarded because it is legally incompetent. If there is more than a scintilla of probative evidence to support the finding, the point of error must be overruled. *Texaco v. Pennzoil*, 729 S.W.2d at 787; Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

In reviewing factual insufficiency points of error, we must consider all of the evidence that is relevant to the fact finding being challenged. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). We are required to sustain a "factual insufficiency" point of error if we determine that the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. *Id.*, 150 Tex. at 664–65, 244 S.W.2d at 661; *Texaco v. Pennzoil*, 729 S.W.2d at 787; Calvert, 38 Texas L.Rev. 361.

■ One who acts as an agent for another in making a contract must disclose his agency and identify his principal in order to avoid being deemed a party to the contract and individually liable thereon. The duty of disclosure clearly lies with the agent alone; the third party with whom the agent deals has no duty to discover the existence of an agency or to discover the identity of the principal. *Dodds v. Charles Jourdan Boutique*, 648 S.W.2d 763 (Tex. App.—Corpus Christi 1983, no writ). An agent is not relieved from personal liability on a contract involving an undisclosed or partially disclosed principal merely because the party with whom he deals had a theoretical means of discovering that the agent was acting only in a representative capacity. *Anderson v. Smith*, 398 S.W.2d 635, 637 (Tex.Civ.App.—Dallas 1965, no writ). "Knowledge of the real principal is the test, and this means actual knowledge, not suspicion." *Id.*

■ Tampimex was aware that Scippa was an agent, but was not told that Scippa was actually a sub-agent and that the real

principal was not even directly represented in the negotiations. Hideca Petroleum at no time offered any contradictory evidence to prove that Tampimex was ever actually or specifically informed of Hideca Petroleum's role as agent only for Hideca Trading. It was not unreasonable for the trial court to have considered the use of the words "Hideca Petroleum Corp. on behalf of and as instructed only by Hideca Trading, Inc." as being insufficient to convey actual knowledge to Tampimex that Hideca Petroleum was operating only in an agency capacity. The record reflects, as is discussed hereafter, that throughout the negotiations resulting in the contract, appellee was under the impression that it was dealing with a representative of the Houston firm of Hideca Petroleum, not the Cayman Islands firm of Hideca Trading, neither one of which took any affirmative steps to dissuade appellee of this false impression.

Applying the appropriate standard of review, we find that there is more than a scintilla of probative evidence to support the trial court's conclusion that Hideca Petroleum is individually liable on the contract because it was acting for an undisclosed or partially disclosed principal, and substituted its own responsibility for, or pledged its own responsibility in addition to, that of its principal. *See Nagle v. Duncan,* 570 S.W.2d 116, 117 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ dism'd). The evidence introduced is therefore not legally insufficient. Similarly, when reviewing all the relevant evidence in the record, we also determine that the trial court's finding was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Thus, the evidence before the court was not factually insufficient to support the trial court's findings.

Appellants' first point of error is overruled.

We now turn to appellants' third point of error, in which it is asserted that the trial court erred in ruling that Hideca Petroleum was the "alter ego" of Hideca Trading. Appellants' assertion is again based on the claim that the evidence upon which the trial court rested its decision was either legally or factually insufficient. The findings of the trial court support both "alter ego" and other theories for disregarding the corporate fiction, but because the trial court concluded only that Hideca Petroleum was the "alter ego" of Hideca Trading, this is the only theory we may consider on appeal. *See Castleberry v. Branscum,* 721 S.W.2d 270 (Tex.1986).

The doctrine of "alter ego" is a separate and distinct theory and is not to be confused with other reasons for disregarding the corporate fiction. The "alter ego" theory is applicable "where a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry,* 721 S.W.2d at 272; *Pacific Am. Gasoline Co. v. Miller,* 76 S.W.2d 833, 851 (Tex.Civ.App.—Amarillo 1934, writ ref'd). "Alter ego" is often established by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations or between an individual and a corporation. Factors such as identity of shareholders, directors, officers, and employees, failure to distinguish in ordinary business between the two entities, and failure to observe proper formalities, are important. *See, e.g., In re Chrome Plate, Inc.,* 614 F.2d 990 (5th Cir.), *cert. denied,* 449 U.S. 842, 101 S.Ct. 123, 66 L.Ed.2d 50 (1980); *Sagebrush Sales Co. v. Strauss,* 605 S.W.2d 857 (Tex.1980). "Alter ego" is found when there is such unity between corporation and individual, or between corporation and corporation, that the separateness between the two has ceased, and holding only the corporation or just one of the corporations liable would result in injustice. *Castleberry,* 721 S.W.2d at 272. The rationale behind the "alter ego" theory is that if the shareholders themselves, or the corporations themselves, disregard the legal separation, distinct properties, or proper formalities of the different corporate enterprises, then the law will likewise disregard them so far as is necessary to protect individual and corporate creditors. *Id.*

The record reveals that while Hideca Petroleum claims that it had authority to

deal with appellee for the purchase of an international oil cargo only at the direction of Hideca Trading, and only pursuant to specific instructions received from Hideca Trading, *there is no evidence that Hideca Petroleum ever received any directions or instructions at any time from Hideca Trading.* There is no evidence of any communication at all between the two Hidecas concerning the crude oil transactions with appellee. Hideca Petroleum's independent dealings with appellee in the absence of any direction or instructions from Hideca Trading clearly suggests that the corporations themselves disregarded the separateness of the two corporate enterprises.

The record also contains evidence that the same Houston address was used both by Hideca Trading and by Hideca Petroleum, and both Hidecas shared the same owners, the Tudela brothers of Caracas, Venezuela. Employees of Tampimex testified that Hideca Petroleum never indicated to them that the names "Hideca Petroleum" and "Hideca Trading" referred to two separate corporate entities. Evidence was introduced that it was customary in the petroleum business to use various forms of a corporate name to refer to the same company. In view of this industry custom, it is not unreasonable for appellee to believe the term "Hideca" to be the primary corporate name with the words "Petroleum" and "Trading" being of secondary importance for purposes of corporate identification. Testimony was presented that Hideca Petroleum never represented to appellee that it was dealing with anything other than a Houston-based company, informing Tampimex that Hideca Trading had the same home address in Houston as did Hideca Petroleum. Evidence was also introduced that it was the custom in the petroleum industry to deal far more cautiously with corporations incorporated and operating outside the United States, as was the case with Hideca Trading, than with domestic corporations. Thus, more than a scintilla of evidence was before the trial court suggesting that both of the Hideca corporations generally disregarded the separateness of their corporate entities, to the detriment of appellees.

■ We reaffirm the soundness of the "single business enterprise" theory, quite analogous to partnership principles, that when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred by the other component entities in pursuit of that business purpose. See *Paramount Petroleum Corp. v. Taylor Rental Center,* 712 S.W.2d 534 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In viewing the relevant evidence in its entirety, we are unable to conclude that the trial court's finding was so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellants' third point of error is overruled.

We now consider appellants' second point of error. Appellants claim that the trial court erred in enforcing the contract between Hideca Petroleum and Tampimex because the transaction involved an amount in excess of $500, and the written documentation of the sales agreement did not comply with requirements of Tex.Bus. & Com. Code Ann. sec. 2.201 (Vernon 1968), in that it failed to name Hideca Petroleum as a party to the agreement and otherwise did not indicate that a contract of sale had been made between the parties.

The Statute of Frauds, as it applies to commercial transactions in Texas, is found in the Tex.Bus. & Com.Code Ann. sec. 2.201 and 2.202 (Vernon 1968), and provides as follows:

Sec. 2.201. Formal Requirements; Statute of Frauds

(a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or

incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(b) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

Sec. 2.202. Final Written Expression: Parole or Extrinsic Evidence

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(1) by course of dealing or usage of trade (Section 1.205) or by course of performance (Section 2.208); and

(2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

■ In its findings of fact, the trial court found that the written documentation of the sales agreement was primarily a confirmation and was not intended by the parties to be a complete and exclusive statement of the terms of the contract. Appellants do not attack this finding in their appeal. Therefore, in light of sec. 2.202, the writing may be "explained or supplemented ... by course of dealing or usage of trade ... (or) by evidence of consistent additional terms."

■ Appellants do not dispute that they received the written documentation of the sales agreement and were aware of its contents. The written confirmation was addressed to "Hideca Trading" and referred to "Hideca Trading" as buyer, making no mention of "Hideca Petroleum."

Appellants cite this omission as evidence that appellee did not put appellants on notice that it looked to Hideca Petroleum as a party to the agreement. But sec. 2.201 specifically provides that a contract is not made unenforceable because the writing memorializing it omits or incorrectly states a term. The trial court was, accordingly, authorized to find that the confirmatory memorandum either omitted one of the two buyers in the contract or misstated the identity of the buyers, thus not in either case rendering the contract unenforceable against Hideca Petroleum. All that is required is that the confirmation afford a rational basis for believing that the offered oral evidence rests on the real transaction. *See* Tex.Bus. & Com.Code Ann. sec. 2.201, comment 1 (Tex.U.C.C.) (Vernon 1968).

Further, appellee presented evidence explaining and supplementing the agreement. Evidence was before the court, as has already been stated, that it was customary in the petroleum business to use various forms of a corporate name to refer to the same company. Therefore, appellee's omission of reference to "Hideca Petroleum" in the written confirmation is not conclusive evidence that appellee did not look to Hideca Petroleum as a party to the contract.

Appellee also introduced evidence that it believed that it was dealing with one company and not with the agent of a second company, and that appellants never took affirmative steps to inform appellee that Hideca Petroleum acted as a mere agent. Additionally, there is no evidence that appellants acted to dissuade appellee of its mistaken belief that it was at all times dealing with the principal and not with an agent. Hideca Petroleum does not deny that it failed to object to the contents of the confirming telex. Consistent with our holding that the evidence was sufficient to support the court's finding that Hideca Petroleum was the "alter ego" of Hideca Trading, we conclude that the trial court's findings that Tampimex's written confirmation did comply with sec. 2.201, that Tampimex's explanatory evidence did not contradict the confirmation but merely supplemented it, and that Hideca Petroleum was

bound by the agreement, were not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellants' second point of error is overruled.

Appellants assert in points of error four and five that the trial court erred in finding that Hideca Petroleum was liable for negligence to Tampimex because Hideca Petroleum was acting only as the agent for Hideca Trading. Hideca Petroleum claims that, not being in contractual privity with Tampimex, it owed neither a contractual nor a common law duty of ordinary care to Tampimex. In addition, Hideca Petroleum contends that it was not liable in negligence to Tampimex because the evidence is insufficient to support that finding. Hideca Petroleum claims that it had no duty to provide a letter of credit or to designate a vessel because it owed no contractual duty to Tampimex, but only a duty to act in the best interest of its principal, Hideca Trading. In addition, it claims that any acts of negligence damaging a third party's pecuniary interest are not actionable. While we have already concluded that there is sufficient evidence to support the trial court's holding that Hideca Petroleum was a party to the contract between appellee and Hideca Trading, we shall nonetheless consider appellants' arguments asserted in their fourth and fifth points of error.

Appellee claims that Hideca Petroleum is liable regardless of whether it was a party to the contract because an absence of privity is not a defense to negligence. Appellee cites *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922) (Cardozo, J.), and *Susser Petroleum Co. v. Latina Oil Corp.*, 574 S.W.2d 830 (Tex.Civ.App.—Texarkana 1978, no writ), as authority for this position.

The law is in considerable flux when addressing the question whether a negligence action may be maintained for misrepresentation to a non-contractual third party. Judge Benjamin Cardozo first enumerated the doctrine of negligent misrepresentation in *Glanzer*, where he found that the defendant, a public weigher, owed a duty to plaintiffs to certify a correct weight of

beans despite the fact that the weigher had no contract with plaintiffs. Judge Cardozo held,

> [a]ssumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less [sic] an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law."

233 N.Y. at 239, 135 N.E. at 276.

However, nine years later, when confronted with an opportunity to expand *Glanzer*, Judge Cardozo declined. In *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), Cardozo did not extend the scope of liability for economic damages caused by negligence to every third party not in privity. In *Ultramares*, the plaintiff had loaned money to a corporation based on defendant's audit of that corporation. Judge Cardozo held that,

> [i]n the case at hand, the [audit] service was primarily for the benefit of [the audited company] ... and only incidentally or collaterally for the use of those to whom [the audited company] might exhibit it thereafter."

255 N.Y. at 183, 174 N.E. at 446.

While courts have differed on the synthesis of *Glanzer* and *Ultramares*, we note that the trend is to dispense altogether with privity requirements in negligence suits. *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977).

The Restatement (Second) of Torts 552 (1977) has also embodied the reasoning of *Glanzer*. Its analysis has been cited with approval in some Texas cases: *Rosenthal v. Blum*, 529 S.W.2d 102, 104 (Tex.Civ.App. —Waco 1975, writ ref'd. n.r.e.); *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873, 876 (Tex.Civ.App.—Fort Worth 1971, writ ref'd. n.r.e.). Of particular interest to the case at bar is *Susser Petroleum Co.*, 574 S.W.2d at 830, involving negligent misrepresentations concerning availability and delivery of jet fuel. The Court held that a party supplying false information in the

course of business for the guidance of others in their business transactions is liable for negligent misrepresentation, and that the supplier of information owes a duty to exercise reasonable care and competence in obtaining or communicating correct information. *Id.* at 832.

However, some Texas courts have declined to recognize a cause of action for negligent misrepresentation to third parties in cases involving attorneys. *First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin, & Stewart,* 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). While the law in Texas concerning negligent misrepresentation to third parties does not yet appear to be fully settled, considerable authority, as cited above, exists to justify the trial court's conclusion that appellants owed appellee a duty not to misrepresent their ability to perform. We conclude that a party to a contract to perform services generally owes a common law duty to perform with ordinary care and skill, and negligent omission or commission relating to the performance of the contract is a tort as well as a breach of contract. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947); *Coastal Constr. Co. v. Tex–Kote, Inc.,* 571 S.W.2d 400, 405 (Tex. Civ.App.—Waco 1978, writ ref'd n.r.e.).

Tampimex introduced evidence showing that appellants did not provide a necessary letter of credit or designate a vessel to receive the oil, thereby forcing Tampimex, which had already purchased the oil in reliance on Hideca Petroleum's representations, to cancel its sales contract with Derby Resources, and that such failures on appellants' part directly caused great economic loss to Tampimex. In addition, there was testimony that Hideca Petroleum's employee, Vincente Scippa, with whom appellee dealt, had never consummated an oil trade either before or after the multi-million dollar contract that forms the basis of this lawsuit. Hideca Petroleum, as the supplier of information in the course of its business for the guidance of Tampimex in its business, owed a duty to Tampimex to exercise reasonable care in obtaining and communicating correct and reliable information, as well as a duty to perform competently its obligations assumed under the contract. Hideca Petroleum breached those duties to the damage of Tampimex.

Even if this Court did not agree, which is not the case, with the trial court's determination that Hideca Petroleum was a party to, and bound by, the contract in issue, we find that there is more than the requisite scintilla of probative evidence to support the trial court's findings and conclusions, and further that such findings are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellants' fourth and fifth points of error are overruled.

Appellants claim in their sixth point of error that this Court should reverse Tampimex's award of attorney's fees if this Court imposes liability on Hideca Petroleum only on the basis of negligence. Appellants correctly cite *Fowler v. One Sequin Art Center,* 617 S.W.2d 763, 765 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), for the proposition that appellee is not entitled to recover for attorney's fees when its recovery is in negligence. We have, however, upheld the trial court's holding that Hideca Petroleum is liable to appellee on grounds of *both* breach of contract and negligence. Therefore, given the liberal construction mandated by Tex.Civ.Prac. & Rem.Code Ann. sec. 38.005 (Vernon 1986), appellee is entitled to recover attorney's fees under Tex.Civ.Prac. & Rem.Code Ann. sec. 38.001 (Vernon 1986).

Accordingly, we overrule appellants' sixth point of error.

The judgment of the trial court is affirmed.