ALUMINUM CHEMICALS (BOLIVIA), INC., Appellant,

v.

BECHTEL CORPORATION, Appellee.

No. 06–99–00150–CV.

Court of Appeals of Texas, Texarkana.

Argued July 12, 2000.

Decided Aug. 4, 2000.

Johnny Walker, Bill Jones, LLP, Cash, Jones, LLP, Houston, for appellant.

Warren W. Harris, Tom F. A. Hetherington, Laura B. Herring, J. Clifford Gunter, III, Tracy C. Temple, Bracewell & Patterson, LLP, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Aluminum Chemicals (Bolivia), Inc. (hereafter ACBI) sued Bechtel (and Xytel–Bechtel, Inc. (hereafter XBi), a related corporation) for converting technology. ACBI alleged that Bechtel/XBi failed to return documents that described a process for manufacturing chemicals. Bechtel obtained a partial summary judgment that removed ACBI's theory of alter ego from the case. When trial began, ACBI nonsuited XBi, and the jury found that ACBI had not proved conversion. The court accordingly rendered a take-nothing judgment in favor of Bechtel.

ACBI contends that the court erred by granting a partial summary judgment on its claim of "joint enterprise" and by overruling its motion to strike the testimony of Bechtel employee Jane Slay.

ACBI retained XBi to conduct a study to help it determine whether it was feasible to build a sodium cyanide plant in Bolivia. XBi is a corporation owned 51% by Xytel Corp., who is not a party to the lawsuit, and 49% by Bechtel. XBi determined that the plant would be economically viable, and in 1990 ACBI directed XBi to carry out a "comprehensive conceptual design and capital cost estimate" which they describe as a "bankable document." That document included the information needed to detail the steps necessary to set up the enterprise.

During this time frame, ACBI purchased detailed information from two eastern European companies about the methodology necessary to produce hydrogen cyanide and sodium cyanide (Basic Engineering Documents).[1] That information was provided to XBi so that it could be included in its calculations. XBi completed the "bankable document" in September 1992.

The president of ACBI testified that in 1992 the project was shelved. According to ACBI, during the summer of 1996 XBi rebuffed its requests that it perform the detail design for construction of a plant. In October 1996, ACBI (actually, an affiliated company-Coastal Products & Chemicals ) asked for the return of the information (which ACBI calls the "technology"). Bechtel, which was maintaining the document archives of XBi, informed ACBI that it had searched its records and archives and could not find the engineering documents, and thus could not return them. ACBI then filed suit against XBi and Bechtel in October 1997, alleging that they had lost or destroyed the Basic Engineering Documents.

█ ACBI first contends that the court erred by granting Bechtel's motion for summary judgment on its claim of "joint enterprise."

As correctly pointed out by Bechtel, its motion for summary judgment did not seek summary judgment on that concept of law. The summary judgment specifies that it denies Bechtel's motion as to the concept of borrowed employees, but grants the motion against ACBI's allegation that XBi was an alter ego of Bechtel. Our review of ACBI's petition does not reflect that it alleged that the two were engaged in a joint enterprise, and the partial summary judgment does not purport to render judgment on that issue.

---

1. It appears that ACBI never actually purchased the license to use the information, but only paid for the initial information package.

The only way in which this contention of error could be viable is if "alter ego" and "joint enterprise" were merely different ways of describing the same legal issue. They are not. Under Texas law a joint enterprise, as that term is used in the law of negligence, signifies a legal relationship between two or more parties that imposes the responsibility upon each joint venturer for the negligent acts of the other while acting in furtherance of their common undertaking. *See Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974). There are four basic elements required to establish a joint enterprise: (1) an agreement among the members of the group; (2) a common purpose; (3) a community of pecuniary interest; and (4) an equal right to control the enterprise. *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex.1995); *see Texas Dep't of Transp. v. Able*, 981 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1998, pet. granted).[2]

In contrast, an "alter ego" is an entirely different construct of the law. It recognizes that a major purpose of the corporate structure is to shield its shareholders from liabilities of the corporation. *Menetti v. Chavers*, 974 S.W.2d 168, 171 (Tex. App.—San Antonio 1998, no pet.). However, Texas case law and various statutory provisions allow piercing the veil of a corporation or provide other avenues for shareholders or others to be held liable for actions of the corporation. *See, e.g.,* Tex. Bus. Corp. Act Ann. art. 2.21 (Vernon Supp. 2000); Tex. Tax Code Ann. § 171.255 (Vernon 1992); *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986).

Alter ego is a basis for disregarding the corporate fiction "where a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry*, 721 S.W.2d at 272. It applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id., citing First Nat'l Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939). Alter ego "is shown from the total dealings of the corporation and the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.; Hall v. Timmons*, 987 S.W.2d 248, 250 (Tex.App.-Beaumont 1999, no pet.).[3]

2. This Court discussed the concept of "joint enterprise" in a footnote in *Ely v. General Motors Corp.*, 927 S.W.2d 774, 779 n. 4 (Tex. App.—Texarkana 1996, writ denied). That footnote follows:

> Often, joint enterprise is used to describe the endeavor that joint venturers are seeking to conduct. For example, in *R.L. Lipsey, Inc. v. Panama–Williams, Inc.*, the court used the terms as follows: "If a *joint venture* exists, one joint venturer has the authority to bind other joint venturers by contracts made in furtherance of the *joint enterprise*." 611 S.W.2d 917, 920 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (emphasis added); *accord Otis Elevator Co. v. Zac Smith & Co.*, 715 S.W.2d 806, 808 (Tex.App.—Austin 1986) (joint venturer may bind his associates by contract in furtherance of a joint enterprise), *aff'd*, 734 S.W.2d 662 (Tex.1987), *cert. denied*, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988); *Vick v. George*, 671 S.W.2d 541,

547 (Tex.App.—San Antonio 1983) (equal right of all parties in a joint venture to direct and control conduct of each other in obtaining objectives of the joint enterprise may be express or implied), *rev'd in part on other grounds*, 686 S.W.2d 99 (Tex.1984); *see also Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex.1995); *Government Employees Ins. Co. v. Edelman*, 524 S.W.2d 546, 549 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). The term joint enterprise (sometimes called a common enterprise according to BLACK'S LAW DICTIONARY 838 (6th ed.1990) appears most commonly in automobile negligence cases. *See* 13 WILLIAM V. DORSANEO, TEXAS LITIGATION GUIDE § 290.32[2][e] (1996)); 1 J. HADLEY EDGAR, JR. & JAMES B. SALES, TEXAS TORTS AND REMEDIES § 4.05[2][b] (1996).

3. *Castleberry* was overruled by Tex. Bus. Corp. Act Ann. art. 2.21(A)(3) (Vernon Supp.2000) to the extent that failure to observe corporate

■ Once alter ego is found to exist, in order to impose liability on a shareholder or affiliate of the corporation the plaintiff must show that the person on whom liability is sought to be imposed (1) caused the corporation to be used for the purpose of perpetuating, and (2) perpetrated an actual fraud on the obligee for the direct personal benefit of the person on whom liability is sought to be imposed. TEX. BUS. CORP. ACT ANN. art. 2.21(A),(B); *Harco Energy, Inc. v. Re–Entry People, Inc.*, 23 S.W.3d 389, 393 (Tex.App.—Amarillo 2000, no pet. h.); *Menetti*, 974 S.W.2d at 173.[4]

■ ACBI contended at oral argument that it was actually attacking the concept of a "single business enterprise," which it argues is synonymous with the alter ego claim. The theory of "alter ego" is also a separate and distinct theory from the concept of a "single business enterprise." *George Grubbs Enters., Inc. v. Bien*, 881 S.W.2d 843, 859 (Tex.App.—Fort Worth 1994), *rev'd on other grounds*, 900 S.W.2d 337 (Tex.1995); *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 843 (Tex.App.—Houston [1st Dist.] 1987, no writ). That term was used by ACBI in only one place in a single document in its lawsuit-in its response to Bechtel's motion for summary judgment. That issue was not briefed.

■ It is not the proper function of this Court to create arguments for an appellant. We are restricted to addressing the arguments actually raised, not those that might have been raised. *See Garcia v. Robinson*, 817 S.W.2d 59 (Tex.1991).

Even if it had properly been raised and briefed, the "single business enterprise" theory is described as analogous to part-

nership principles: that when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred by the other component entities in pursuit of that business purpose. *See Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Hideca Petroleum Corp.*, 740 S.W.2d at 844. It is not a concept that is synonymous with the doctrine of alter ego as defined above.

The matter that all of these theories has in common is that they are methods to disregard the corporate fiction. *See Harwood Tire–Arlington, Inc. v. Young*, 963 S.W.2d 881 (Tex.App.—Fort Worth 1998, pet. dism'd by agr.). Their common purpose is to find a means of imposing liability where none would otherwise exist. *Equinox Enters., Inc. v. Associated Media Inc.*, 730 S.W.2d 872, 877 (Tex.App.—Dallas 1987, no writ).

■ Further, even if the briefing of ACBI could be said to extend to cover alter ego, and even if we concluded that the partial summary judgment on that issue was improper, in the context of this case harm cannot be shown. The other corporation, XBi, was nonsuited by ACBI. Thus, there were no jury issues involving XBi and no liability determinations as to that former party. Because of the nonsuit, there now remains no other corporation or party to which such a theory might apply. The contention of error is overruled.

Because the concepts of "joint enterprise" and "alter ego" are not synonymous, the contention of error has no basis in the judgment, pleadings, motions, or responses and is overruled.

formalities is no longer a factor in proving alter ego.

**4.** Although there is some collegial disagreement about its intent, the cited amendments to the Texas Business Corporation Act removed the traditional distinction between the

application of alter ego in a contract and a tort context. The result is that fraud must now be shown before a plaintiff may recover in either situation. *See generally Menetti v. Chavers*, 974 S.W.2d 168 (Tex.App.—San Antonio 1998, no pet.).

■ ACBI next contends that the court should have struck the testimony of Bechtel employee Jane Slay. Slay testified at trial that she worked in document control with Bechtel, and that in July 1994 Michael Jusbache, the president of ACBI, came to her offices and wanted to look at boxes from ACBI. She testified that she took him to records retention, he looked at boxes, told her that they were his, and demanded to take the boxes away. Slay testified that she went to records retention and retrieved the boxes, and that Jusbache left with them.

ACBI contends that the trial court abused its discretion by permitting her to testify, in light of Bechtel's interrogatory answers to the effect that it did not know of anyone with information which might show that Bechtel had turned the documents over to anyone else, and Bechtel's failure to supplement its answers in that regard. ACBI did not object to her testimony at trial. ACBI came into court the next morning and asked the court to strike her testimony as a sanction for discovery abuse, presumably under Tex.R. Civ. P. 193.6. Under that rule a party who fails to supplement discovery may not introduce into evidence the information not timely disclosed.

ACBI did not object to the testimony at bar. Thus, any objection to the testimony has not been preserved for review. Tex. R.App. P. 33.1(a). The issue raised, however, is whether the court erred by overruling ACBI's motion to strike the testimony. The question of whether the one-day delay before ACBI sought to strike her testimony waives the complaint is not one that has been previously addressed. It appears from our limited record that Slay's testimony came in without objection and that she was cross-examined at length. On the next day, ACBI made a motion to strike on the basis set out above.

The initial question is whether the motion to strike was timely. Most of the cases invoking this rule or its predecessor do not involve trial testimony, but pretrial proceedings, or situations where the witness was stopped when he began to go into areas outside the scope of discovery, or where an undisclosed witness was involved. *See Clark v. Trailways, Inc.,* 774 S.W.2d 644 (Tex.1989); *Burrhus v. M & S Supply, Inc.,* 933 S.W.2d 635, 639 (Tex. App.—San Antonio 1996, writ denied). This Court has also held that an objection to an expert's testimony on a previously undisclosed theory of recovery was untimely when it was made only after the theory was completely introduced. *Miles v. Ford Motor Co.,* 922 S.W.2d 572, 591 (Tex.App.—Texarkana 1996), *rev'd in part on other grounds,* 967 S.W.2d 377 (Tex. 1998).

We have found no instance where a claim of error is preserved when a party waits until the witness completes her testimony, without objection, and then asks the court on the next day to strike the testimony. The claim of error has not been preserved for appellate review. Tex.R.App. P. 33.1.

The judgment is affirmed.