In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00412-CV


____________________



IN RE COMMITMENT OF JAMES GRINSTEAD






On Appeal from the 221st District Court 


 Montgomery County, Texas


Trial Cause No. 07-02-02125-CV 






MEMORANDUM OPINION


 The State of Texas filed a petition to commit James Grinstead as a sexually violent
predator under the Sexually Violent Predator Act (the "Act"). See Tex. Health & Safety
Code Ann. §§841.001-.150 (Vernon 2003 & Supp. 2008). A jury found Grinstead to be a
repeat sexually violent predator who suffers from a behavior abnormality making him likely
to engage in a predatory act of sexual violence. See id. The trial court entered a final
judgment and order of civil commitment under the Act. Grinstead asserts two issues on
appeal. He contends that the evidence is legally and factually insufficient to support the
jury's verdict and that the trial judge erred in failing to strike certain expert testimony. We
affirm the judgment of the trial court.

LEGAL AND FACTUAL SUFFICIENCY


 In issue one, Grinstead contends that the evidence is legally and factually insufficient
to establish that he has serious difficulty controlling his behavior. In In re Commitment of
Gollihar, the court stated,

 Because the statute employs a beyond-a-reasonable-doubt-standard, on appeal
we review legal sufficiency issues by the standard of review applied in
criminal cases for legal sufficiency of the evidence. To test the legal
sufficiency of the evidence that supports an affirmative jury finding, we review
all of the evidence in a light most favorable to the verdict.


In re Commitment of Gollihar, 224 S.W.3d 843, 846 (Tex. App.--Beaumont 2007, no pet.)
(citations omitted). In the present case, we review the evidence presented at trial to
determine if a rational jury could have found beyond a reasonable doubt that Grinstead has
serious difficulty controlling his behavior. See id.

 We will also apply the factual sufficiency standard applied in criminal cases with
respect to our factual sufficiency review in the present case. Id. Viewing the evidence in a
neutral light, we will determine whether a jury was rationally justified in finding guilt beyond
a reasonable doubt. See id. (citing Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App.
2006)). "To reverse a case on a factual sufficiency challenge, we must be able to say that the
great weight and preponderance of the evidence contradicts the jury's verdict or that the
verdict is clearly wrong or manifestly unjust." Id. (citing Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006)).

Evidence Presented at Trial


 James Grinstead testified at trial by video deposition. In his deposition he admitted
to three of the seven sexual offenses in the record. Grinstead testified that he committed the
sexual assaults because he felt he had no control over his life. According to Grinstead, the
sexual assaults met his need for power and control. He testified that he manipulated the
young girls he victimized, and that he chose them because they were younger and weaker. 

 With respect to the first sexual assault, Grinstead testified that when he was around
fourteen years old he saw a young girl who he believed to be about six years-old playing
across the street from his grandmother's house. He described how he got the young girl
alone in the garage by playing basketball with her. Grinstead testified that after he got her
into the garage he fondled her and attempted to penetrate her vaginally. At his deposition
he did not recall whether he performed oral sex on the victim and testified that he asked her
to perform oral sex on him and she said no. Grinstead admitted that when he attempted
vaginal penetration there was some bleeding, however, he denied prior police reports
indicating that he wiped off the blood and continued sexually assaulting the young girl. 
Grinstead testified that at the time he committed the offense he knew it was wrong, but he
told himself that it wasn't. 

 Grinstead stated that his second sexual assault occurred roughly a year later against
another six or seven year-old girl. He admitted to sexually assaulting his second victim on
two separate occasions. He explained that both sexual assaults against his second victim took
place during the day time. He stated that the first assault took place while his mother was
babysitting the young girl at his house. He got the young girl alone in his backyard, fondled
her, and attempted to penetrate her vaginally but was unable to do so. Grinstead testified that
he had just finished smoking marijuana when he assaulted her the second time. He felt that
"since [he] had victimized her the first time and got some of [his] need for power and control
met [he] could do it again." This time Grinstead got the young girl alone in her backyard by
playing soccer with her and then began to fondle her. Grinstead stated that he was caught
fondling the young girl by a neighbor. He stated that he never worried about getting caught
when he was committing the offenses. 

 He was arrested for the sexual offenses committed against his second victim and
confessed to the sexual assault he committed against his first victim. As a result of his sexual
offenses Grinstead was sent to the Texas Youth Commission ("TYC") at the age of fifteen
where he was incarcerated for four years. While Grinstead contended that he changed his
life while incarcerated in TYC, he admitted that he "had an authority problem" during his
time there and that the staff would describe him as a "bad student by acting out." 

 Grinstead stated that after being released from TYC he resumed using alcohol and
drugs. Significantly, he was only out of TYC for a little over a year when he was charged
with another sexual assault, this time against a nineteen year-old female. (1) Grinstead pleaded
guilty to this assault and was sentenced to four years in the Texas Department of Criminal
Justice-Institutional Division. With respect to this third victim, Grinstead testified at his
deposition that he did have sexual contact with her in a family restroom at the mall, however
he stated that it was consensual. 

 In addition to testifying about his sexual offenses, Grinstead admitted to engaging in
cruelty to animals both before and after being sent to TYC. His cruelty to animals included
engaging in sexual acts with a dog, cutting up a cat, and dangling kittens in front of dogs and
then turning them loose. He also testified about a homosexual relationship he had in prison. 
While Grinstead characterized this sexual relationship as healthy he admitted that the sexual
relationship involved "unusual" acts, such as "choking, biting, things of that nature." 
Grinstead testified that he enjoys being choked until he almost passes out and finds such acts
sexually exciting. He stated that he currently considers himself homosexual and is more 
attracted to men than women. 

 He testified that he has suffered from mental health issues on and off his entire life,
including bipolar disorder but stated that he has never received steady treatment. He also
stated that he does not believe he currently suffers from these issues and does not need
treatment. He admitted cutting himself to relieve stress and admitted to roughly twenty
suicide attempts. He also testified regarding his prior addictions with drugs and alcohol, but
stated that he cured himself of his alcoholism while in prison and will resume drinking when
he is released. 

 Dr. Timothy Proctor, a psychologist, testified for the State. Dr. Proctor testified that
Grinstead has a behavioral abnormality that makes him likely to engage in predatory acts of
sexual violence. Dr. Proctor provided several diagnoses as the basis for his opinion. The
first diagnosis was paraphilia not otherwise specified. Dr. Proctor explained this diagnosis
as follows:

 Paraphilia is a sexual disorder. Not otherwise specified means that I'm not
able to be more specific. In this case there are several instances of sexual
deviancy that to me come together to make this paraphilia not otherwise
specified. As a juvenile, there was acting out against prepubescent children. 
There was the act of force against the 19 year old. There were acts with
animals when he was a juvenile. As an adult he's reporting being engaged in
a sadomasochistic behavior and being gratified by masochism, which is the
feeling of pain during a sexual relationship. 


 There was also an instance or some instance of exhibitism. He told me
of one instance where he was high. It was difficult to tell from the TYC
records, but there were times where he was caught masturbating. Its tough to
tell if that was intentional or not. He also reported an instance of rubbing up
against people for sexual gratification, so there was a real plethora of sexual
deviancy that comes together for that diagnosis. 


Dr. Proctor also diagnosed Grinstead with depressive disorder not otherwise specified, three
substance abuse diagnoses for alcohol, cocaine, and prescription drug dependence, all of
which were in remission as a result of his being in prison, and personality disorder not
otherwise specified with borderline antisocial traits. Dr. Proctor testified that there was a
high potential to recidivate. 

 Dr. Proctor explained to the jury that Grinstead's self reports of his sexual offenses
differed from the descriptions of those offenses in the record. For example, according to the
police report, the incident with the family dog involved not only oral sex but intercourse as
well. Additionally, based on the statement Grinstead gave the police, there were two
instances of abuse towards his first victim, not one. Likewise, the police reports showed four
instances of abuse towards his second victim, not two. The police reports and expert
interviews also established discrepancies with respect to Grinstead's deposition testimony
of the details of those sexual assaults. With respect to Grinstead's third victim, the nineteen
year-old female claimed that Grinstead used a pen as a weapon and forced her into sexual
acts in the family bathroom at the mall. Dr. Proctor testified that because Grinstead's last
sexual assault victim was an adult, there is now an additional group of potential victims. He
also noted the significance of the fact that this assault was committed with a weapon in a
public place. 

 Dr. Proctor characterized Grinstead as an impulsive person and thought Grinstead was
likely to act on his impulses. Dr. Proctor testified that while Grinstead characterized himself
as primarily homosexual, he reported to Dr. Proctor that he still has fantasies about females. 
Dr. Proctor also testified about Grinstead's substance abuse and his admission that he will
resume drinking when released from prison under the presumption that he can control it. Dr.
Proctor stated that this "raised a lot of concern about the extent to which he's really in touch
with his ability to control his behavior and understand it." 

 Dr. Proctor testified regarding the actuarial instruments he performed on Grinstead. 
On the Hare Psychopathy Checklist, Grinstead's score indicated a moderate level of
psychopathy, which Dr. Proctor explained indicates someone who has a lot of psychopathic
traits, such as "impulsivity, being callous or cold, exploiting other people, having a parasitic
lifestyle, promiscuous sexual behavior, getting into trouble with the law, not following rules,
that kind of thing." More specifically, Dr. Proctor told the jury that Grinstead scored very
high on Factor 2 of the checklist, which deals with social deviance such as "having poor
control over your emotions and your behavior." Dr. Proctor then testified that Grinstead
scored high on two actuarials that measure sexual recidivisim. 

 Dr. Sheri Gaines, a psychiatrist, also testified for the State. Dr. Gaines' testimony was
very similar to Dr. Proctor's testimony. Dr. Gaines also concluded that Grinstead has a
behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. 
Gaines testified that Grinstead "meets the criteria for lots of different diagnoses," but
testified that there were three, which she believed to be most relevant to the underlying
proceedings: paraphilia not otherwise specified, polysubstance dependence, and antisocial
personality disorder. Dr. Gaines then explained the various paraphilias she saw symptoms
of in Grinstead:

 The sadomasochistic paraphilias that I talk about with the punching and
choking and biting and hitting and, of course, the offense where he pled guilty
to forcing the 19 year old into the bathroom and held a pen at her neck
threatening her, that would go towards the sadomasochistic. The zoophilia or
the bestiality, which is with the dog, there were some talk in the records about
frotteurism, which is rubbing up against somebody, and there was some
consideration that possibly the offense against the female correctional officer
was a manifestation of frotteurism. And then his offending against the
prepubescent girls when he was 14 or 15 years old could possibly meet criteria
for pedophilia as well.

 Dr. Gaines explained what risk factors were exhibited by Grinstead which played a
role in her opinion:

 Mr. Grinstead's risk factors are the age range of his victims, the number of
offenses that he has, his substance abuse, his mental health history with suicide
attempts and self injurious behavior, his lack of a support system, unrealistic
plans for the future, the very nature of the sexual offenses with the young girls
and then his current sexual fantasies with the physical violence associated with
them, inconsistencies in how he currently describes himself sexually. He
described himself as bisexual to me and in other places has been describing
himself as homosexual, so his continued confusion with regard to his sexuality. 
That's some of them.


Dr. Gaines testified that Grinstead has a high level of impulsivity, which factored into her
finding. She also concluded that Grinstead has very poor coping skills. She explained that
"at the times he committed his offenses he was feeling hopeless and he was feeling out of
control and that he wanted to find a victim that he could overpower and take control of . . .
." Like Dr. Proctor, Dr. Gaines testified that Grinstead related accounts of his prior sexual
assaults that were inconsistent with his deposition testimony. In his interview with Dr.
Gaines, Grinstead admitted that he had assaulted his first victim twice and that in addition
to attempting to penetrate her vaginally there had been mutual oral sex. 

 Dr. Gaines also testified about Grinstead's cruelty to animals, his substance abuse, and
his plans to resume using drugs and alcohol. Dr. Gaines testified that Grinstead told her that
he had the dog lick peanut butter off his penis on roughly eight occasions, and that if he had
not been caught he felt like it would have "continued and progressed." Dr. Gaines testified
that Grinstead also told her that he "liked to watch the dogs rip up the cats" after he turned
the cats loose. Finally, Dr. Gaines testified that Grinstead stated that he was an alcoholic but
did not plan to avoid drugs or alcohol when released. Dr. Gaines explained that this was
relevant to her risk assessment because Grinstead was on marijuana during at least one of
the offenses, and "substance abuse is a disinhibitor for Mr. Grinstead," although Gaines
further stated she does not think it requires a lot of disinhibition to perform the offenses. Dr.
Gaines concluded that Grinstead does not have an accurate grasp of his mental and
behavioral issues. As an illustration of this point, she pointed to his deposition testimony in
which he stated that he did not need to avoid schools, parks, or children upon his release
from prison. 

Applying the law to the facts



 To be civilly committed under the Act, the State must prove beyond a reasonable
doubt that a person is a sexually violent predator. See Tex. Health & Safety Code Ann.
§841.062. A sexually violent predator is a person who "1) is a repeat sexually violent
offender; and 2) suffers from a behavioral abnormality that makes the person likely to engage
in a predatory act of sexual violence." Id. §841.003. A "behavioral abnormality" is defined
as "a congenital or acquired condition that, by affecting a person's emotional or volitional
capacity, predisposes the person to commit a sexually violent offense, to the extent that the
person becomes a menace to the health and safety of another person." Id. §841.002(2). 

 The United States Supreme Court has stated that before a person can be civilly
committed as a sexually violent predator there must be "proof of serious difficulty in
controlling behavior." Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856
(2002). The Court explained:

 [W]e did not give to the phrase "lack of control" a particularly narrow or
technical meaning. And we recognize that in cases where lack of control is at
issue, "inability to control behavior" will not be demonstrable with
mathematical precision. It is enough to say that there must be proof of serious
difficulty in controlling behavior. And this, when viewed in light of such
features of the case as the nature of the psychiatric diagnosis, and the severity
of the mental abnormality itself, must be sufficient to distinguish the
dangerous sexual offender whose serious mental illness, abnormality, or
disorder subjects him to civil commitment from the dangerous but typical
recidivist convicted in an ordinary criminal case. 


 . . . .


 [O]ur cases suggest that civil commitment of dangerous sexual offenders will
normally involve individuals who find it particularly difficult to control their
behavior--in the general sense described above. And it is often appropriate to
say of such individuals, in ordinary English, that they are "unable to control
their dangerousness."


Id. at 413-15 (citations omitted). The jury's finding that Grinstead suffers from a behavioral
abnormality that makes him likely to engage in predatory acts of sexual violence under
section 841.062 of the Texas Health and Safety Code entails a determination that he has
serious difficulty in controlling his behavior. See In re Commitment of Almaguer, 117
S.W.3d 500, 505 (Tex. App.--Beaumont 2003, pet. denied).

 On appeal, Grinstead asserts that Dr. Proctor and Dr. Gaines both testified that their
diagnoses would not render Grinstead unable to control his behavior. We disagree with this
characterization of their testimony. Both doctors testified that it was not a requirement for
a diagnosis of paraphilia that a person be unable to control their behavior and clarified that
such a diagnosis could encompass either a lack of ability to control one's behavior or a
choice not to control one's behavior. Neither doctor was asked specifically whether they
believed Grinstead has serious difficulty controlling his behavior.

 The State presented evidence which supports the conclusion that Grinstead has serious
difficulty controlling his behavior. Both doctors testified that Grinstead is an impulsive
person. Both doctors testified there was a high potential to recidivate, and both doctors
diagnosed Grinstead with conditions that indicate poor control over one's emotions and
behavior. The State also presented evidence differentiating Grinstead from the typical
recidivist. 

 Dr. Proctor highlighted Grinstead's history of committing sexual offenses against
various groups, including female children, female adults, and animals. While Grinstead now
claims to be a homosexual, he admitted to Dr. Proctor that he still has fantasies about
females. Likewise, he told Dr. Gaines that he still has violent sexual fantasies involving his
ex-girlfriend. Dr. Proctor concluded that Grinstead is "[not] limited in what he's attracted
to" and "[has] sexually acted out . . . in a variety of areas." Dr. Gaines indicated that
Grinstead was very complicated psychiatrically and that he meets the criteria for many
different psychiatric diagnoses. She testified that "giving him one diagnosis or one label and
creating one treatment plan . . . [would] be really difficult . . . ." Dr. Gaines also testified that
Grinstead does not have an accurate grasp of his problems. 

 Grinstead's own testimony also support's the conclusion that he had serious difficulty
controlling his behavior. Grinstead stated in his deposition that the reason he committed the
sexual offenses was because he had no control over his life. He testified that assaulting
young girls would help him gain control. Grinstead testified at the time he sexually assaulted
the young girls he knew it was wrong, but told himself it wasn't. Grinstead argues that he
made the choice to commit the sexual assaults. However, "the fact that a person waits for
an opportunity to act does not mean the person has no serious difficulty in controlling
behavior." In re Commitment of Mullens, 92 S.W.3d 881, 886 (Tex. App.--Beaumont 2002,
pet. denied). Here the very reason Grinstead committed the assaults was because he felt out
of control. 

 Additionally, Grinstead has a history of committing actions he concedes he knows are
wrong. For example, he admitted that concerns of getting disciplined in prison for having
a sexual relationship were not enough to make him stop. Likewise, he explained that he
knew cutting himself was "the wrong thing to do" but that he "never really cared." With
respect to his cruelty against animals, he stated that the animals did not deserve it, but he did
it anyway to gain acceptance. Under similar facts, we noted that the jury could have
concluded that Grinstead's lack of appreciation for the consequences of his actions
demonstrates a lack of control. See generally In re Commitment of Barbee, 192 S.W.3d 835,
842 (Tex. App.--Beaumont 2006, no pet.) (testimony that Barbee knew his actions were
wrong yet chose to proceed showed that Barbee did not fully appreciate his conduct's
impact). Moreover, Grinstead was only out of TYC for a little over a year when he
committed the sexual assault against his third victim. This also supports the conclusion that
he has serious difficulty controlling his behavior. See generally In re Commitment of
Morales, 98 S.W.3d 288, 291 (Tex. App.--Beaumont 2003, pet. denied) ("[Defendant]
committed a second sexual offense while on probation for the first, thus demonstrating [a]
lack of control.").

 "The jury is the sole judge of the credibility of the witnesses and the weight to be
given their testimony." In re Commitment of Mullens, 92 S.W.3d at 887 (citing Barnes v.
State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994)). "The jury may resolve conflicts and
contradictions in the evidence by believing all, part, or none of the witnesses' testimony." 
Id. (citing Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)). "Further, a jury
may draw reasonable inferences from basic facts to ultimate facts." Id. (citing Lacour v.
State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000)). Serious difficulty in controlling his
behavior could reasonably be inferred from Grinstead's past behavior as well as his
testimony. See In re Commitment of Martinez, No. 09-05-493 CV, 2006 WL 2439752, at *4
(Tex. App.--Beaumont Aug. 24, 2006, no pet.) (not designated for publication) ("lack of
volitional control may be inferred from his past behavior, his history of violating probation
conditions, and from his own testimony). 

 Our review of the record reveals evidence from which a reasonable juror could
conclude that Grinstead suffers from a behavior abnormality that makes him likely to engage
in a predatory act of sexual violence. We find the evidence legally sufficient to support the
jury's finding. We also find evidence factually sufficient under relevant factual sufficiency
standards of review to support the jury's verdict. Issue one is overruled. 

DENIAL OF MOTION TO STRIKE EXPERT TESTIMONY AND IMPOSE SANCTIONS

 In his second issue, Grinstead argues that the trial judge abused his discretion by
denying a request to strike certain testimony of Dr. Gaines and a motion for sanctions. In his
motion, Grinstead argued that Dr. Gaines testimony that she had diagnosed Grinstead with
pedophilia should be excluded because she failed to provide this diagnosis at her deposition. 
Specifically, Grinstead contends that Dr. Gaines provided an incomplete answer during her
deposition when she was questioned regarding her diagnosis of Grinstead. The State argues
that Grinstead waived any error on this issue during trial and that even if error was preserved,
Dr. Gaines did not provide an incomplete answer in her deposition. 

 "To preserve error for review, a party must make a timely and specific objection that
is followed by an adverse ruling." Perry v. State, 957 S.W.2d 894, 896 (Tex. App.--Texarkana 1997, pet. ref'd) (citing Tex. R. App. P. 33.1). "The objection must be made as
soon as the basis for the objection becomes apparent; otherwise, the objection is waived." 
Id. (citing Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995)). 

 Dr. Gaines first testified regarding her diagnosis of pedophilia during the State's direct
examination. (2) No objection was made to this testimony. Defense counsel elicited further
testimony from Dr. Gaines regarding this diagnosis on cross examination. (3)
 No objection was
made under Rule 215 of the Texas Rules of Civil Procedure, or otherwise, to her testimony. 
See Tex. R. Civ. P. 215. Additional testimony was elicited regarding her pedophilia diagnosis
on re-direct examination by the State and on re-cross examination by defense counsel. No
objections were made to her testimony. The following morning, Grinstead's counsel made
a motion for sanctions and request to strike the testimony of Dr. Gaines under Rule 215, on
the basis that she provided an incomplete answer at her deposition that should be treated as
a failure to answer under the rules. Id. The court reviewed the deposition testimony and
concluded that Dr. Gaines had not provided an incomplete answer. The trial court denied the
motion for sanctions and Grinstead's request for new trial. 

 Gaines' testimony regarding her diagnosis of pedophilia was elicited during direct
examination, cross examination, re-direct examination, and re-cross examination, without any
objection. In addition, during its cross examination defense counsel blatantly asserted its
contention that Dr. Gaines had provided an evasive or incomplete answer during her
deposition. Therefore, defense counsel was clearly aware of the basis for his objection at the
time the testimony was elicited and presented. The question we must answer is whether the
motion to strike, filed the following day was timely under Rule 33.1(a) of the Texas Rules
of Appellate Procedure. 

 The Texarkana Court of Appeals has addressed this very issue. See Aluminum
Chemicals (Bolivia), Inc. v. Bechtel Corp., 28 S.W.3d 64, 69 (Tex. App.--Texarkana 2000,
no pet.). The court concluded that an objection to testimony made the day after the testimony
was presented at trial was untimely. Id. The court stated, "[w]e have found no instance
where a claim of error is preserved when a party waits until the witness completes her
testimony, without objection, and then asks the court on the next day to strike the testimony." 
Id; see also Perry, 957 S.W.2d at 896 (error was waived where defendant did not object to
testimony elicited during the State's direct examination until defendant completed cross
examination); Farm Servs., Inc. v. Gonzales, 756 S.W.2d 747, 750 (Tex. App.--Corpus
Christi 1988, writ denied) (motion to strike trial testimony made at the conclusion of the case
was insufficient to preserve error). 

 We hold that any error related to the admission of Dr. Gaines' testimony was not
preserved for our review. The judgement of the trial court is affirmed.

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 29, 2008

Opinion Delivered January 15, 2009



Before Gaultney, Kreger, and Horton, JJ.
1. While the testimony at trial reflected that this victim was nineteen years old at the
time of the offense, we note that the indictment alleged that she was a child "younger than
17 years of age" at the time of the offense. Regardless of the age of the victim, the offense
constitutes a qualifying offense under section 841.002(8) of the Texas Health and Safety
Code. See Tex. Health & Safety Code Ann. §841.002(8); Tex. Pen. Code Ann. §21.011
(Vernon Supp. 2008).
2. During her direct examination the State asked Dr. Gaines to explain what she meant
in her deposition testimony when she said that Grinstead was complicated psychiatrically. 
Dr. Gaines explained that Grinstead met the criteria for many different psychiatric diagnosis
and highlighted the three that she thought were most relevant to the proceedings. The State
then asked what other various paraphilias Gaines saw in Grinstead. In response Dr. Gaines
discussed several different paraphilias, including pedophilia. Gaines went on to explain that
the age difference between Grinstead and the young girls was significant, as well as the fact
that Grinstead had already gone through puberty while his victims had not. 
3. On cross-examination the following exchange took place between Dr. Gaines and
Grinstead's attorney:


 Q: And you didn't diagnose James with pedophilia, did you?


 . . . .


 A: I did include it in my diagnosis.

 Q: You included pedophilia as a part of the paraphilia not otherwise specified,
correct?

 A: No. It can be separate also.

 Q: Have you diagnosed him with pedophilia?

 A: Yes.

 Q: You have diagnosed him with pedophilia?

 A: Yes.

 Q: Had you diagnosed him with pedophilia when you took your deposition?

 A: Yes. I said he meets criteria for lots of different diagnosis, and since it was so
complicated and there was such a plethora of things going on, I decided to
highlight the three that I thought were clearest and most straightforward, and
so pedophilia was not one of those because it's a little bit more confusing. 


 . . . .


 Q: Were you asked to give the three most important, or were you asked to give
what he was diagnosed with?

 A: I don't think it was qualified. 

 Q: When you testified during the deposition, did you at that time diagnose him
with pedophilia?

 A: Yes.

 Q: Did you testify to the pedophilia?

 A: I don't think so.

 Q: And, Dr. Gaines, allow me to take a moment to look up pedophilia really
quickly. I believe that for pedophilia one of the requirements and I understand
it's not a cookbook but isn't a person supposed to be old enough that they
develop sexually and understand where they are sexually?

 A: I don't know that it words it that way. It might even say 16. I don't have the
DSM in front of me right now either, but as you said, it's not a cookbook and
it's not black and white. It's a reference book and it's a guideline; and so
given that, I still feel like he meets criteria. 


 . . . .


 Q: Dr. Gaines, you state that the diagnosis of pedophilia isn't as important in this
case?

 A: I thought it was not as straightforward and not as easy to explain, and I also
thought that we would hit that gray area of his age and his sexual maturity
which might bog things down.