Robert J. HALL and Sibon Beverage, Inc., Appellants,

v.

Kenny TIMMONS, Appellee.

No. 09–97–228CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 21, 1999.

Decided March 25, 1999.

Rehearing Overruled April 15, 1999.

David E. Bernsen, Zona Jones, H. Scott Alexander, Bernsen, Jamail and Goodson, Beaumont, B. Thomas McElroy, Johnson & McElroy, Dallas, Robert Jackson, Jasper, for appellants.

Mike Jacobellis, Tonahill, Hile, Leister & Jacobellis, Beaumont, J. Kevin Dutton, Tonahill, Hile, Leister & Jacobellis, Jasper, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

DON BURGESS, Justice.

Kenny Timmons filed suit against his employer, SiBon Beverage Corporation, for personal injuries. (SiBon does not subscribe to Texas Workers' Compensation.) Timmons' suit also named Robert Hall, chairman of SiBon, claiming alter ego and single business enterprise. Timmons fell from the ceiling at SiBon while attempting to fix a leaky pipe, suffering a herniated disk in his neck. Following surgery for the neck, Timmons was placed in a full body cast. While in that cast, he fell down the steps at his home and incurred a fracture dislocation to his right elbow and a back vertebra. The jury found in favor of Timmons and the trial court entered judgment in accordance with the verdict. Hall and SiBon appeal on numerous issues. We first address Hall and SiBon's no evidence points.

## ISSUES OF NO EVIDENCE

### Alter Ego

Hall and SiBon claim the trial court erred in overruling the motion for judgment notwithstanding the verdict and in submitting Question 2[1] to the jury because there was no evidence Hall is SiBon's alter ego. Alter ego is a basis for disregarding the corporate fiction "where a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986)(quoting *Pacific American Gasoline Co. of Texas v. Miller,* 76 S.W.2d 833, 851 (Tex.Civ.App.—Amarillo 1934, writ ref'd)). It applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* (citing *First Nat. Bank in Canyon v. Gamble,* 134 Tex. 112, 132 S.W.2d 100, 103 (1939)). Alter ego "is shown from the total dealings of the corporation and the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.* (citing *Lucas v. Texas Industries, Inc.,* 696 S.W.2d 372, 374 (Tex.1984); *Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571, 573 (Tex.1975)).[2]

Timmons introduced evidence that all funds for SiBon had been forwarded from Hall's personal operating account. Hall personally approved or denied funds for SiBon. According to SiBon's president, Kenneth Cornett, SiBon's only means of acquiring

---

1. Question 2 asked, "In connection with their conduct, if any, in this case, do you find that Sibon [sic] Beverage Corp. is the 'alter ego' of Robert Hall?" The jury answered yes.

2. *Castleberry* was overruled by Tex. Bus. Corp. Act Ann. art. 2.21(A)(3) (Vernon Supp.1999) to the extent that failure to observe corporate formalities is no longer a factor in proving alter ego.

funds for operation or purchases was to request them from Hall under his line of credit. Hall admitted Cornett was a "passive" president. Cornett testified SiBon was undercapitalized. According to Hall, if he chose not to loan SiBon more money, it had none.

Hall countermanded decisions made by SiBon personnel. Hall admitted that Timmons worked directly for Bill Foster, an employee of Hall, not SiBon. SiBon's registered address is Hall's personal office. SiBon's board meetings were held at Hall's personal office. Hall had a lien on all of SiBon's assets. SiBon wrote checks totaling $75,000 to Dogwood Partners; Hall's partnership in Dogwood entitled him to receive 99% of that amount.

Considering the evidence and inferences tending to support the jury's finding and disregarding all contrary evidence and inferences, we conclude there is some evidence to disregard the corporate fiction on the basis of alter ego. *See Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998)(citing *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996)). The evidence, as a whole, rises to the level that would enable reasonable and fair-minded people to differ in their conclusions and permits the jury's inference that SiBon is Hall's alter ego. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). Hall's first issue and that portion of SiBon's second point of error claiming no evidence are overruled.

### *Negligence*

 Hall and SiBon further contend the trial court erred in overruling the motion for judgment notwithstanding the verdict and in submitting Question 1 [3] because there is no evidence that SiBon, and Hall (as SiBon's alleged alter ego), negligently injured Timmons. "For decades," the Texas Supreme Court has recognized that an implied part of the employer-employee relationship is the duty to use ordinary care in providing a safe work place. *Leitch v. Hornsby*, 935 S.W.2d

114, 117(Tex.1996) (citing*Missouri, Kan. & Tex. Ry. v. Hannig*, 91 Tex. 347, 43 S.W. 508, 510 (1897); *I.M. Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex.1995)).

Phillip Nessler, an expert witness for Timmons, testified the injury was caused by the employer's failure to provide Timmons with an adequate place to stand to perform the work. According to Nessler, OSHA [4] regulations specifically applied to this worksite and required the employer to provide a scaffold or ladder. Nessler also criticized the design of the building because the pipes and joints were installed above the false ceiling and it was foreseeable that an employee would have to work on the pipes. It was Nessler's opinion that either solid flooring should have been installed under the pipes or a staircase or permanent ladder should have provided access to the pipes. Timmons' advice to SiBon and Hall that the pipes should be run around the walls so they could be anchored to the walls, providing workers access for repairs, had been ignored. Instead, the plant was designed so that all the pipes had to be routed over the breakrooms, bathrooms and mixing room.

Timmons testified he had no experience in safety training and safety issues were never discussed with Hall. No safety training or instructions were given to employees and Hall was aware Timmons was unable to provide training. No safety meetings were held and Hall and SiBon refused to authorize a contractor to conduct safety meetings. Nessler found SiBon's safety program deficient under minimum industry requirements and federal regulations.

According to Timmons, he was chastised for spending funds on warning signs. Timmons further testified that upon first visiting the plant, he pointed out obvious workplace hazards which were never properly addressed and that Hall and SiBon had actual knowledge of many hazards. Timmons was given a limited budget and limited authority to purchase tools and equipment. SiBon had only one 28–foot ladder and one-half of a

---

**3.** Question 1 asked the jury, "Did the negligence, if any, of Sibon [sic] Beverage, Inc., proximately cause the injuries in question?" The jury answered yes.

**4.** Occupational Safety and Health Administration.

broken extension ladder. Timmons' request to purchase a ten-foot stepladder was never approved. After Timmons' fall, two stepladders were purchased and were thereafter used daily. Both Timmons and a co-worker, Al Cordova, testified no ladder was available. According to both Timmons and Nessler, the availability of a ladder could have prevented the injury.

Fifteen to twenty percent of Timmons' work was on the pipes above the false ceiling. When a ladder could not be borrowed from a subcontractor, he had to climb up into the ceiling and walk across planks and the beams on top of the walls to reach the spot where repairs were needed. SiBon was aware of this procedure.

Viewing this evidence in the light most favorable to the jury's finding, and disregarding all evidence and inferences to the contrary, we conclude there is some evidence that SiBon and Hall (as SiBon's alter ego), negligently injured Timmons. *See Gonzalez,* 968 S.W.2d at 936. Hall's third issue and that part of SiBon's first point of error raising the same argument are overruled.

### Sole Proximate Cause

■ In a related point, Hall and SiBon argue the trial court erred in overruling the motion for judgment notwithstanding the verdict and in submitting Question 1 because the evidence proves conclusively as a matter of law that Timmons' negligence was the sole proximate cause of his injuries. The evidence set forth in the above discussion of negligence negates that claim. The evidence, as a whole, permits an inference that Timmons' negligence was not the sole proximate cause of his injuries. *See Moriel,* 879 S.W.2d at 25. Hall's fifth issue and the relevant portion of SiBon's first point of error are overruled.

### Single Business Enterprise

■ Hall and SiBon contend the trial court erred in overruling the motion for judgment notwithstanding the verdict and in submitting Question 4[5] because there is no evidence that SiBon and Hall operated as a single business enterprise. Hall first contends that to impose liability under the single business enterprise doctrine, both enterprises must be corporations. We find no authority in support of this contention. Hall cites *Beneficial Personnel Serv. of Texas v. Rey,* 927 S.W.2d 157, 165 (Tex.App.—El Paso 1996), *pet. granted, judgm't vacated w.r.m.,* 938 S.W.2d 717 (Tex.1997), wherein the court stated the doctrine of single business enterprise applies when two or more business entities act as one. The court did not, however, hold that an "entity" can only be a corporation or that the doctrine does not apply in other circumstances.

■ Hall then argues that there is no evidence of any of the required elements. We look at a variety of factors to determine whether Hall and SiBon should be treated as one business: (1) common employees, (2) common offices, (3) centralized accounting, (4) payment of wages by one business to another business's employees, (5) common business name, (6) services rendered by employees of one business on behalf of another business, (7) undocumented transfers of funds between the businesses, and (8) unclear allocations of profits. *See Paramount Petroleum Corp. v. Taylor Rental Center,* 712 S.W.2d 534, 536 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The record contains evidence that Timmons worked directly for Bill Foster, an employee of Hall, not SiBon. There was conflicting evidence as to whether Hall or SiBon paid Foster as Hall's "personal consultant." Hall had a 99% interest in Dogwood Partners which also paid a salary to SiBon's president, Ken Cornett, who had a one-percent interest in Dogwood. SiBon's registered address is Hall's personal office. All funds for SiBon were forwarded from Hall's personal operating account and the only method SiBon's had of acquiring funds was to request them from Hall under his line of credit. Hall had a lien on all of SiBon's assets. The record contains no evidence that SiBon's operations ever generated any profits. The record does reflect substantial loss-

---

5. In Question 4 the jury was asked, "Do you find that Sibon [sic] Beverage Corp. and Robert Hall operate as a single business enterprise." The jury said yes.

es and additional loans which were personally guaranteed by Hall and, at trial, were being paid back by Hall.

Considering this evidence in light of the factors listed above, and disregarding all evidence and inferences to the contrary, we find there is more than a scintilla of evidence to support the jury's finding that a single business enterprise existed. *See Old Republic Ins. Co. v. EX–IM Services Corp.,* 920 S.W.2d 393, 396 (Tex.App.—Houston [1st Dist.] 1996, no writ). Hall's seventh issue and SiBon's no evidence claim in its fourth point of error are overruled.

### Past Medical Expenses

■ Hall and SiBon claim the trial court erred in overruling the motion for judgment notwithstanding the verdict and in submitting Question 3.f [6] because there is no evidence to support the jury's finding that Timmons' past medical expenses amounted to $47,645.65. Dr. Martin Haig, an orthopedic surgeon, testified the treatment Timmons received was necessary. He also testified that charges for that treatment would be at least $53,000. This is some evidence of the reasonableness and necessity of Timmons' past medical expenses of $47,645.65. *See Sharm, Inc. v. Martinez,* 900 S.W.2d 777, 785 (Tex. App.—Corpus Christi 1995, no writ). Hall's ninth issue and SiBon's no evidence claim in its third point of error are overruled.

■ SiBon also argues in its third point of error that the trial court erred in failing to distinguish between Timmons' neck injury and back injury in submitting the damage issue to the jury. SiBon argues that as to the back injury, there is no causation. Though we fail to see the causal connection, SiBon's brief does not provide a reference to the record where the trial court was apprised of this objection and ruled against SiBon. *See* Tex. R. App. P. 38.1(h). Thus, nothing is preserved for review. *See* Tex. R. App. P. 33.1(a).

**6.** Question 3 asked the jury to determine what sum of money would fairly and reasonably compensate Timmons for his injuries. Subsection f

### JURY INSTRUCTIONS

#### *Alter Ego*

■ In Hall's eleventh and twelfth issues and SiBon's second point of error, it is argued the trial court submitted an improper alter ego instruction resulting in reversible error. The instructions given on alter ego were:

You are instructed that a corporation may be found to be the "alter ego" of another business entity even though some corporate formalities have been observed and corporate and individual property has been kept separate, when corporate form has been used as part of a basically unfair device to achieve an inequitable result. "Alter ego" may be found:

(1) where a corporation is organized and operated as a mere tool or business conduit of another business entity;

(2) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(3) where the corporate fiction is used to circumvent a statute;

(4) where the corporation in question is inadequately capitalized.

The record reveals two requested instructions on alter ego were submitted and refused. Neither Hall nor SiBon's brief clearly identifies which party submitted the instructions or which instruction they are contending on appeal should have been given. However, comments by Hall's counsel when objecting to the jury charge do indicate which instruction Hall sought. That instruction was identical to the one given by the trial court except that it added three more ways in which alter ego may be found:

• where the corporate fiction is used as a means of perpetuating fraud;

• where the corporate fiction is employed to achieve or perpetrate monopoly; and

asked the jury to list a dollar amount specifically for medical care in the past.

- where the corporate fiction is relied upon as a protection of a crime or to justify a wrong.

In answering the objection by Hall's counsel, the trial court stated, "Well, I find there's no fraud involved, no monopoly, and no crime. So I'm not putting those in there." Hall's counsel argued that since the *Castleberry* factors are to be considered in "totality," leaving out the ones that could not be proven and listing only the ones that "there is possibly some evidence of," was an improper statement of law. We agree. The trial court's instruction is incomplete and does not comply with *Castleberry's* mandate that "a proper alter ego instruction should include *all* the relevant factors and consider the total dealings of the corporation and the individual." *Castleberry*, 721 S.W.2d at 276 (emphasis added). *Castleberry* does not authorize including only the factors of which there is some evidence in an alter ego instruction.[7] *See id.* at 276. This would result in an instruction that, like the erroneous instruction in *Castleberry*, "treats the several alter ego factors as if each factor alone were a sufficient basis for disregarding the corporate fiction (without due regard for the separate corporate nature of the business, or whether such separate corporate nature ceased to exist, or if the corporate assets are dealt with by the individual as if owned by the individual ... )." *Id.* We find the trial court erred in submitting an improper alter ego instruction.

█ Our inquiry does not end here, however. In order for the error to be reversible, we must conclude the error probably caused the rendition of an improper judgment. *See* Tex.R. App. P. 44.1(a)(1). There was a serious dispute in this case whether SiBon was the alter ego of Hall. The evidence was vigorously disputed and the jury might well have found that SiBon was not Hall's alter ego. We conclude the absence of a proper alter ego instruction, in these circumstances, probably caused the rendition of an improper judgment *See Texas Dept. of Human Services of State of Tex. v. Hinds*, 904 S.W.2d

629, 637 (Tex.1995). Issues eleven and twelve in Hall's brief and the relevant portion of SiBon's second point of error are sustained.

### Sole Proximate Cause

█ In issues thirteen and fourteen, Hall argues the trial court's submission of an improper instruction on sole proximate cause constitutes reversible error. The trial court instructed the jury that:

> There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, the [sic] no act or omission of any other person could have been a proximate cause.

Hall objected on the basis that "any person *not a party to the suit*" was an incorrect statement of the law in the case of a nonsubscriber. We agree.

Article 8306, sec. 1(1), (2), and (3), provides that in worker's compensation cases by plaintiffs for injuries sustained while in the course of employment, the employer is deprived of the defense that: the employee was contributorily negligent; the injury was caused by the negligence of a fellow employee; or the employee had assumed the risk of injury incident to his employment. TEX.REV.CIV. STAT. ANN. art. 8306, sec. 1(1), (2), and (3) (Vernon 1967). Article 8306, sec. 1(4) says that in all actions against an employer who is not a subscriber, as defined in this law, it shall be necessary to a recovery for the plaintiff to prove negligence of such employer or some agent or servant of such employer acting within the general scope of his employment. TEX. REV.CIV. STAT. ANN. art. 8306, sec. 1(4) (Vernon 1967). Under a plain reading of this statute, any negligence of the plaintiff which was not the sole proximate cause of his injury would avail the employer nothing. Under this statute, insofar as a nonsubscriber is concerned, all the plaintiff has to do is show that some negligence of the employer caused his injury. It mat-

---

7. We note that since this matter was tried, a pattern jury charge on alter ego was derived from *Castleberry*. *See* STATE BAR OF TEX. TEXAS

PATTERN JURY CHARGES—BUSINESS, CONSUMER & EMPLOYMENT PJC 108.2 (1997).

ters not if the plaintiff was negligent, or helped cause his injury, unless, as we have stated, that negligence was the sole and only cause of his injury. In such case, of course, the plaintiff would have failed to prove the requisite negligence of the employer. In order for appellee to recover for her injuries, it was necessary for her to allege and prove negligence on the part of her employer proximately causing the injuries. The only defenses available to ... the employer in this case, were to show that it was not guilty of negligence proximately causing the injury or that appellee herself was guilty of some act which was the sole proximate cause of the injuries.

Appellant's defense of sole proximate cause was properly submitted to the jury by way of the following instruction in the court's charge:

> There may be more than one proximate cause of an event, but there can be only one sole proximate cause. If an act or omission of any person was the sole proximate cause of an occurrence, then no act or omission of any other person could have been a proximate cause.

> This was all that [the employer] needed or was entitled to raise in its defense of negligence of [the employee] as sole proximate cause.

*Holiday Hills Retirement and Nursing Center, Inc. v. Yeldell,* 686 S.W.2d 770, 775 (Tex. App.—Fort Worth 1985), *rev'd on other grounds,* 701 S.W.2d 243 (Tex.1985). Hall's requested instruction is identical to the above instruction.

As *Yeldell* notes, the non-subscribing employer does have the defense that the employee was the sole proximate cause of the injuries; thus the employer did not negligently proximately cause the injuries. *Id.* The trial court's instruction deprived Hall of

this defense. By providing that "if an act or omission of any person *not a party to the suit* was the sole proximate cause, then no act or omission of any other person could have been a proximate cause," the court precluded the jury from finding that the conduct of Timmons, a party to the suit, was the sole proximate cause. We find the trial court erred in submitting an improper instruction on sole proximate cause.

The issue of causation was hotly disputed and conflicting evidence was introduced. The jury might well have found Timmons' conduct to be the sole proximate cause of his injuries. Therefore, we determine the improper instruction, which did not permit such a finding, probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). Hall's thirteenth and fourteenth issues are sustained.

*Single Business Enterprise*

Hall's issues numbered fifteen and sixteen claim the trial court submitted an improper single business enterprise instruction resulting in reversible error.[8] The record reflects Hall objected to this instruction on the grounds single business enterprise had not been pleaded and there was no evidence of any of the elements. We have reviewed the allegations in Timmons' amended petition and find the single business enterprise theory sufficiently pleaded. In our prior discussion, we determined there was some evidence of single business enterprise. Accordingly, we conclude the trial court did not err in overruling Hall's objections to the instruction.

■ On appeal, Hall also argues the instruction was an improper statement of the law. This argument was not made to the trial court and the record does not reflect Hall submitted his own instruction on this

---

**8.** The jury was instructed as follows:

You are instructed that two companies may be considered to be a single business enterprise when those two companies do not operate as separate entities, but rather have integrated their resources to achieve a common business purpose. Factors which evidence such a single business enterprise include:
a. common employees,
b. common offices,
c. centralized accounting,
d. unclear allocations of profits and loss between the companies,
e. services being rendered by the employees of one business entity on behalf of another business entity, and
f. absence of corporate records.

All of these factors do not have to exist in order to justify a finding of single business enterprise.

issue. Therefore, this complaint has not been preserved for review. *See* TEX. R. APP. P. 33.1. Issues fifteen and sixteen are overruled.[9]

## INSUFFICIENCY OF THE EVIDENCE

Hall and SiBon both raise issues of insufficiency of the evidence to support the jury's findings. As we have already sustained error in the jury instructions that will require a reversal and a remand for new trial, we will not address these issues on their merits.

## OFFSET EVIDENCE

■ SiBon's fifth point of error contends the trial court erred in refusing to admit offset evidence before the jury and in then refusing to grant an offset in the final judgment. Timmons argues this point is waived as SiBon wholly failed to provide any references to the record or citations to authorities supporting its position. *See* TEX. R. APP. P. 38.1(h). We are inclined to agree. *See Casteel–Diebolt v. Diebolt*, 912 S.W.2d 302, 305 (Tex.App.—Houston [14th Dist.] 1995, no

writ)(we are not required to search the record without guidance to determine the validity of a claim of reversible error.) However, as we have already found reversible error and are not affirming the trial court's judgment, it is unnecessary to address the issue of offset.

## CONCLUSION

We have determined the trial court committed reversible error in submitting an improper alter ego instruction and an improper sole proximate cause instruction. Therefore, we reverse the judgment and remand the cause for a new trial.

## REVERSED AND REMANDED.

---

**9.** We wish to note that in our review of the legal sufficiency of the evidence to support the jury's finding of a single business enterprise, we set forth all the factors listed in *Paramount Petroleum Corp.*, 712 S.W.2d at 536, some of which were not included in the trial court's instruction. Citing *Paramount*, the Texas Supreme Court in *George Grubbs Enterprises, Inc. v. Bien*, 900 S.W.2d 337, 338–39 (Tex.1995), found the trial court's instruction inadequate because it erroneously omitted the factors necessary to determine whether a single business enterprise existed. While the Texas Supreme Court did not decide whether it would be reversible error for a trial court to omit *some* of the factors, as opposed to all of them, it is certainly the better practice to list all the factors.