Jerry C. NICHOLS, and et ux,
Belinda L. Nichols,

v.

PABTEX, INC.; Kansas City Southern Transport Company, Inc.; Kansas City Southern Industries, Inc.; and Kansas City Southern Railway Company.

No. 1:99–CV–0027.

United States District Court,
E.D. Texas,
Beaumont Division.

March 23, 2001.

Charles Keith Kebodeaux, Beaumont, TX, George Michael Jamail, Reaud Law Firm, Beaumont TX, for plaintiff.

Gerald R. Flatten, Rienstra Dowell & Flatten, Beaumont, TX, for defendant Pabtex.

Daniel V. Flatten, Jenkens & Gilchrist, Houston, TX, Stephen H Forman, German Bernsen & Gertz, Beaumont, TX, for defendants Kansas City Southern.

## MEMORANDUM OPINION

COBB, District Judge.

This is a personal injury case in which Plaintiff Jerry Nichols complains of per-

manent injuries sustained while in the employ of Defendant Pabtex, Inc. ("Pabtex"). He seeks recovery against Pabtex and The Kansas City Southern Railway Company ("KCSR") and its parent Kansas City Southern Industries, Inc. ("KCSI") under the Federal Employers Liability Act, 45 U.S.C. § 51 ("FELA"), the Safety Appliance Act, 45 U.S.C. § 51 ("SAA"), the Texas Railroad Liability Act ("TRLA"), Tex. Rev.Civ.Stat.Ann.Art. 6432, and general negligence principles. All Defendants move for summary judgment. Nichols responds by showing that genuine issues of material fact exist with respect to whether (1) Pabtex is a common carrier by rail and thus subject to the FELA, (2) by virtue of the nature of its operations and its relationship to KCSR, Pabtex is the alter ego of KCSR, or is a single business enterprise with it, such that the corporate arrangement and relationship constitutes an attempt to circumvent the FELA, and (3) Nichols' acceptance of workers' compensation benefits estops him from recovering under the FELA. Defendants' motions for summary judgment, therefore, are denied.

## I. BACKGROUND

The basic facts in this case are not complicated. Nichols was in the course and scope of his employment for Pabtex when he was injured on December 4, 1998. He was engaged generally in a process in which KCSR rail cars filled with petroleum coke are dumped onto a conveyor belt owned by Pabtex. Nichols specifically was coupling and uncoupling railcars owned by KCSR when a locomotive owned by Pabtex bumped a KCSR rail car causing his foot to become pinned between the ground and a board he was using to chock a moving rail car. Ultimately his foot was amputated. The accident occurred at Pabtex's facility in Port Arthur, Texas, which was operated under a management contract by Becon International, Inc. ("Becon"). Nichols sought and received workers' compensation benefits under Pabtex's workers' compensation insurance policy. He brought suit in this court on January 20, 1999.

The dispute over the nature and structure of the Defendant corporations is the heart of the case. Nichols was nominally an employee of Pabtex at the time of his injury. That company is a wholly owned subsidiary of Southern Industrial Services ("SIS"), a wholly owned subsidiary of Kansas City Southern Lines ("KCSL"), which, finally, is a wholly owned subsidiary of KCSI, one of the named defendants in this case. The other named defendant affiliated with Kansas City Southern is KCSR, which is also a wholly owned subsidiary of KCSL. Becon is not affiliated with any KCSI company, but it did operate Pabtex's Port Arthur facility under a management agreement.

The structure and relationships are as follows:

Plaintiff contends that KCSI, KCSR, and Pabtex are common carriers by rail and engaged in interstate commerce and, thus, are subject to the FELA. In this regard, Nichols contends that Pabtex is under the control of KCSR and is its partner, agent, or alter ego. Alternatively, he alleges that Pabtex is an artifice created to avoid the application of the FELA (and other federal laws) to perpetuate a fraud on servants of Pabtex by depriving them of the protection of the FELA (and other federal laws). Therefore, according to Nichols, KCSR and Pabtex constitute a single business enterprise, and insofar as the FELA governs, are a unified operation.

Nichols alleges specifically that Pabtex and KCSR violated the FELA by (1) failing to provide a safe workplace, safety appliances, tools, equipment, proper training or supervision, (2) providing defective appliances, tools, equipment, and safety training, and (3) failing to maintain the track and rolling stock and equipment used by Nichols. Nichols also contends that Pabtex was negligent in violation of the TRLA and common law theories of negligence.

## II. ANALYSIS

Defendants KCSI, KCSR and Pabtex move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on three grounds. The Court will consider their separate motions together because the issues are intertwined. First, Pabtex contends that it is not a common carrier by rail engaged in interstate commerce and, therefore, is not subject to the FELA. Second, KCSR and KCSI argue that the doctrines of alter ego and single business enterprise are irrelevant because there is no reason to "pierce the corporate veil" and, even if there is reason to do so, there is no evidence to support either theory in this case. Finally, all three defendants maintain that Nichols is barred from recovering under the FELA because he already accepted workers' compensation benefits from Pabtex. Each of these grounds is discussed below.

The Court begins by discussing the standards by which Defendants' motions will be evaluated.

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant shows that the pleadings, affidavits, and

other evidence available to the Court establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Once the moving party has properly supported its motion, the burden shifts to the party opposing summary judgment to demonstrate genuine issues of material fact necessitating a trial, using the evidentiary sources set forth in Rule 56(c). *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The proof must be of such quality that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). The Court will decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994). Keeping these standards in mind, the Court now turns to the parties' arguments.

## B. Pabtex as Common Carrier

■ Nichols asserts that by virtue of the nature of its operations and its relationship to KCSR, Pabtex is a common carrier subject to the FELA. Pabtex contends that it is not a common carrier by rail engaged in interstate commerce and, therefore, is not subject to the FELA. Because Plaintiff has demonstrated that genuine issues of material fact exist with respect to this issue, the Court rejects Pabtex's motion on this point.

■ A railroad may be liable under the FELA for workplace injuries sustained by employees; however, liability under the FELA is expressly limited to railroads that are also common carriers. The FELA provides that "[e]very common carrier by railroad while engaged in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." 45 U.S.C. § 51. A common carrier has been defined as "one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally." *Kelly v. General Electric,* 110 F.Supp. 4, 6 (E.D.Pa.), *aff'd,* 204 F.2d 692 (3d. Cir.), *cert. denied,* 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953).

In determining whether Pabtex is a common carrier by railroad and within the scope of the FELA, the Fifth Circuit has determined that "various considerations are of prime importance." *Lone Star Steel Co. v. McGee,* 380 F.2d 640, 647 (5th Cir.), cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967). These considerations include whether:

1. There is actual performance of rail service;

2. The service being performed is part of the total rail service contracted for by a member of the public;

3. The entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public; and

4. Remuneration for the service performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.

*Id.; McCrea v. Harris County Houston Ship Channel Navigation District*, 423 F.2d 605, 608 (5th Cir.1970). The question, therefore, is whether, analyzed in the *Lone Star* framework, Nichols has demonstrated that genuine issues of material fact exist on Pabtex's status as a common carrier under the FELA.

#### 1. Performance of Rail Service

Pabtex performed some railroad functions. Pabtex contends that the movement of rail cars over a few hundred feet of track incident to the unloading process is not performance of rail service. According to Pabtex, it owns only one rail locomotive and no rolling stock, and it had only two crews who worked all functions of Pabtex's operations, most of which did not involve running rail equipment. Finally, Pabtex argues that it has "no through track to anywhere but only a looped configuration." Pabtex relies heavily on *McCrea*, wherein the Fifth Circuit held that the Harris County Navigation District was not a common carrier because, in part, the district owned no locomotives or cars, employed no typical railroad employees, operated no scheduled trains, and made no direct charge for movement by rail. *McCrea*, 423 F.2d at 607.

Although the intraplant movement of goods by rail does not make Pabtex a rail carrier under the FELA, *see McCrea*, 423 F.2d at 608–09, Nichols has shown that Pabtex performs at least some rail service. He cites to evidence that rail service to the plant is provided only by KCSR and by no other railroad. In fact, Pabtex does not have the option to take petroleum coke from any other railroad. KCSR also shares its railcars with Pabtex. This evidence suggests that Pabtex and KCSR's operations are highly integrated and mutually dependent. *See Lone Star*, 380 F.2d at 648. Once KCSR leaves cars with petroleum coke or other commodities at the facility, Pabtex workers operate locomotives and move the KCSR cars, couple and uncouple them, and then prepare them for pickup by KCSR. *See Mahfood v. Continental Grain Co.*, 718 F.2d 779, 782 (5th Cir.1983) (defendant that had several thousand feet of railroad track within its grain export facility and used locomotives and a four-man crew "undoubtedly performs some railroad functions"). Moreover, some Pabtex contract proposals have included "switching cars" from the KCSR interchange to Pabtex, a practice that even Pabtex officials admitted would constitute rail service. (Pl.s' Resp. at 13.) *See also, Kieronski v. Wyandotte Terminal Railroad Co.*, 806 F.2d 107, 108 (6th Cir.1986) (in plant switching of cars is "railroad operation"); *Iverson v. Southern Minnesota Beet Co-op.*, 62 F.3d 259, 263 (8th Cir. 1995) (in plant moving of incoming and outgoing railcars between switch spur and loading docks is railroad operation). Pabtex thus performed the kind of railroad services contemplated by the FELA.

#### 2. By a Member of the Public

The services Pabtex performed were part of the total rail service contracted for

by the public. In 1998, according to Nichols, KCSR specifically authorized Pabtex to make "throughput" bids to shipper companies that included one charge for transportation, storage, loading, and unloading services. The customer was not told what portion of the charges was allocable to railroad or what portion was allocable to Pabtex. Pabtex would later allocate the proceeds between itself and KCSR, but the consumer was blind to that allocation. From the customer's standpoint, therefore, it was purchasing from Pabtex a total package consisting of transportation, loading, unloading, and storage services.

### 3. Holding Itself Out to the Public

Pabtex also held itself out as being in the transportation business. In addition to being specifically authorized to make "throughput" bids to shipper companies that included one charge for transportation, storage, loading, and unloading services, Pabtex judicially admitted that it was in the transportation business in another lawsuit. (Pl.s' Resp., Ex. 4.) Pabtex and KCSR often represented themselves as "partners" in offering rail transportation. Pabtex's bills were sometimes inclusive of rail. To the consumer, again, Pabtex offered the whole package of product, transportation, and storage.

### 4. Remuneration

Pabtex also received remuneration for the rail services it performed. KCSR and Pabtex collectively charged one rate for all services and then divided the revenue. Customers often paid one amount that included transportation, storage, loading, and unloading charges, not segregated or divided by KCSR and Pabtex. The two companies then split the revenue according to a formula that, in 1998, was changed without any involvement by Pabtex—i.e., KCSR officials entirely determined the new split. (Clark dep. 34–5, 76.) Pabtex was authorized by KCSR to make deals with customers that included the total rail service, and to allocate the proceeds between Pabtex and KCSR. This "freedom" to allocate revenue, as will be shown below, was tightly controlled by an executive committee made up of KCSR and Becon officers and directors. Pabtex, therefore, received remuneration for the railroad services it performed.

### 5. Conclusion

Nichols has demonstrated that genuine issues of material fact exist on Pabtex's status as a common carrier by rail under the FELA. Although Pabtex's operations might look like the typical "in-plant operations" not subject to the FELA, see McCrea, 423 F.2d at 609, those operations are more extensive. Pabtex owns at least one locomotive, it shares railcars with KCSR, its employees perform rail services, and it makes direct charges for the movement of rail. Pabtex customers purchase the total rail service from Pabtex, often without knowing that KCSR involved. This stands in contrast to the "passive ownership of railroad property" the court found wanting in McCrea. See Id. at 609. Pabtex, moreover, is a link between KCSR, an admitted common carrier, and ocean going barges and vessels, also common carriers that move goods in interstate commerce. Considered in the light of the common ownership by KCSI, Pabtex cannot escape common carrier status under the FELA.

Defendants' motions for summary judgment on Pabtex's status as a common carrier by rail under the FELA, therefore, is denied.

### C. Pabtex as Alter Ego of KCS

■ Pabtex seeks to hold KCSR liable under the FELA by contending that (1)

Pabtex functioned as an alter ego of KCSR and (2) Pabtex and KCSR functioned as a single business enterprise. KCSR and KCSI argue that neither the alter ego or single business enterprise doctrine are relevant because there is no reason to pierce the corporate veil and, even if there is reason to do so, there is no evidence to support either theory in this case. Because Plaintiff has demonstrated that genuine issues of material fact exist with respect to these issues, the Court rejects KCSR and KCSI's argument. *See Castleberry v. Branscum,* 721 S.W.2d 270, 273 (Tex.1986) (holding that question of whether the corporate fiction should be disregarded is one of fact).

Nichols argues that the state-law doctrines of alter ego and single business enterprise are relevant in this case for two reasons. First, they relate to whether Nichols was an employee of the railroad, or of a single business enterprise comprised of the railroad and Pabtex. Second, they relate to whether KCSR has intentionally avoided FELA liability by a "contract ... or device," the purpose or intent of which was to exempt itself from liability under the FELA. *See* 45 U.S.C. § 55 (providing that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability contract by this chapter, shall to that extent be void...." *Id.*).

■ While limited liability remains the norm in American corporation law, an exception exists where a parent company totally dominates and controls its subsidiary, operating the subsidiary as its business conduit or agent. *See Nelson v. International Paint Co.,* 734 F.2d 1084, 1091–93 (5th Cir.1984) (applying Texas law); *Edwards Co. v. Monogram Industries,* 730 F.2d 977, 980–82 (5th Cir.1984) (en banc) (same); *Miles v. AT & T,* 703

F.2d 193, 195 (5th Cir.1983) (same). What makes this case somewhat unique is that Nichols seeks to hold a company liable for the acts of a sister company, not a parent for the acts of its subsidiary. Few cases address this situation, but those that have indicate that the distinction between parent-subsidiary and sister-sister is not relevant. *See Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 338–39 (5th Cir.1999) (evaluating sister companies under alter ego doctrine but finding plaintiff had not proved sufficient control to establish an alter-ego or agency relationship); *Allstate Financial Corp. v. U.S.,* 109 F.3d 1331, 1332 (8th Cir.1997) (sister corporations operating under the parent umbrella of the "Detroit companies" were determined by the IRS to be alter egos of one another, as well as alter egos of the Detroit companies); *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3d 1220, 1 Cal.Rptr.2d 301, 318 (1992) ("[U]nder the single-enterprise rule, liability can be found between sister companies."). Thus, the standard doctrinal considerations will control this Court's evaluation of Plaintiff's claims.

### 1. Alter Ego

■■ Under Texas law, the alter ego doctrine allows the imposition of liability of a corporation for the acts of another corporation when the subject corporation is organized or operated as a mere tool or business conduit. *See Hall v. Timmons,* 987 S.W.2d 248, 250 (Tex.App.—Beaumont 1999, no writ); *Castleberry,* 721 S.W.2d at 272. It applies "when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has ceased and holding only the subsidiary corporation liable would result in injustice." *Harwood Tire—Arlington, Inc. v. Young,* 963 S.W.2d 881, 885 (Tex.App.—Fort Worth 1998, writ dism'd

by agr.). Alter ego is demonstrated "by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations." *Hideca Petroleum Corp. v. Tampimex Oil Int'l Ltd.*, 740 S.W.2d 838, 843 (Tex.App.—Houston [1st Dist.] 1987, no writ). An important consideration is whether a corporation is underfunded or undercapitalized, which is an indication that the company is a mere conduit or business tool. *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex.1984). But in determining whether a subsidiary (or sister company) is the alter ego of its parent (or sister company), no one factor is determinative. *See United States v. Jon–T Chemicals, Inc.*, 768 F.2d 686, 694 (5th Cir.1985).

■ Texas courts instead use a multi-factor test in determining alter ego status. *Id.* at 693. In applying these factors, "courts are concerned with the reality and not form, with how the corporation operated and the individual defendant's relationship to that corporation." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir.1976). Finally, resolution of the alter ego issue is heavily fact-specific. *See Jon–T Chemicals*, 768 F.2d at 694.

"In lieu of articulating a coherent doctrinal basis for the alter ego theory," the Fifth Circuit has "instead developed a laundry list of factors to be used in determining whether a subsidiary is the alter ego of its parent." *Id.* at 692. These factors include whether:

1. The parent and the subsidiary have common stock ownership;

2. The parent and the subsidiary have common directors or officers;

3. The parent and the subsidiary have common business departments;

4. The parent and the subsidiary file consolidated financial statements and tax returns;

5. The parent finances the subsidiary;

6. The parent caused the incorporation of the subsidiary;

7. The subsidiary operates with grossly inadequate capital;

8. The parent pays the salaries and other expenses of the subsidiary;

9. The subsidiary receives no business except that given to it by the parent;

10. The parent uses the subsidiary's property as its own;

11. The daily operations of the two corporations are not kept separate;

12. The subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings;

13. The directors and officers of the subsidiary act independently in the interest of that company, or whether they take their orders from the parent and act in the parent's interest;

14. The connection of the parent's employee, officer or director to the subsidiary's tort or contract giving rise to the suit.

*See Jon–T Chemicals*, 768 F.2d at 691–92; *Nelson v. Int'l Paint Co.*, 734 F.2d 1084, 1093 (5th Cir.1984); *Miles v. AT & T*, 703 F.2d 193, 195–96 (5th Cir.1983). The question then is whether these factors, taken in the aggregate, indicate that KCSR so dominated Pabtex that the Court is justified in disregarding the corporate separation of the two companies.

*2. Single Business Enterprise*

■ The single business enterprise doctrine applies when two or more busi-

ness entities act as one. *See Beneficial Personnel Serv. Of Texas v. Rey,* 927 S.W.2d 157, 165 (Tex.App.—El Paso 1996), *pet. granted, judgm't vacated w.r.m.,* 938 S.W.2d 717 (Tex.1997). Under the doctrine, when corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose. *See Old Republic Ins. Co. v. Ex–Im Serv. Corp.,* 920 S.W.2d 393, 395–96 (Tex.App.—Houston [1st Dist.] 1996, no writ). Like the alter-ego doctrine, the single business enterprise doctrine is an equitable remedy, which applies when the corporate form is "used as part of an unfair device to achieve an inequitable result." *Id.* at 395.

■ Under the "single business enterprise" doctrine, when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for the debts incurred in pursuit of that business purpose. *Old Republic,* 920 S.W.2d at 395–96; *Paramount Petroleum Corp. v. Taylor Rental Ctr.,* 712 S.W.2d 534, 536 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Some factors courts have considered in determining whether corporations have been maintained as separate entities include: common employees and offices; centralized accounting; payment of wages by one corporation to another corporation's employees; common business names; services rendered by the employees of one corporation on behalf of another corporation; undocumented transfers of funds between corporations; and unclear allocation of profits and losses between corporations. *See Hall v. Timmons,* 987 S.W.2d 248, 252 (Tex.App.—Beaumont 1999, no pet.); *Old Republic,*

920 S.W.2d at 396; *Paramount,* 712 S.W.2d at 536.

### 3. Application of Alter–Ego and Single Business Entity Doctrines

Nichols begins by correctly highlighting the fact that this is not the typical alter ego or single business entity scenario where the issue is whether a parent corporation has exceeded the normal exercise of control inherent in ownership of the stock of the subsidiary. This fact reinforces Nichol's overriding point in his response to KCSI and KCSR's motion for summary judgment, which is that there is no legal basis for the exercise of control by KCSR over Pabtex and, therefore, the summary judgment evidence of control he presents illustrates the extent of KCSR domination and control over Pabtex. This Court agrees. The summary judgment evidence raises a genuine issue of material fact on whether KCSR has taken over the management of Pabtex.

First, in 1998, KCSR officers negotiated a contract with Becon, an unaffiliated corporation, delegating many aspects of management of the Pabtex facility to Becon. Through deposition testimony, Nichols shows that KCSR President Mike Haverty initiated the process of trying to find a management company to run Pabtex. Haverty and other railroad officers negotiated the contract along with KCSR attorney Jim Wochner. There was no input from Pabtex on the negotiations and Pabtex did not appoint the KCSR officers to negotiate the contract between it and Becon. No officer, employee or director of Pabtex participated in the negotiation of the contract. In short, there is no evidence that Pabtex participated in or controlled, directly or indirectly, the negotiation of this contract that assigned and delegated fundamental Pabtex functions

and corporate powers, including powers over safety, to Becon.

Nichols' also presented evidence that shows under the contract signed by KCSR and Becon for the management of Pabtex's facility, KCSR was to provide services related to accounting and finance, cash management, capital structure, payment of taxes, legal representation, and insurance. These services were delegated to KCSR even though KCSR was not a signatory to the contract. The contract also provided that Becon would indemnify KCSR, provide insurance naming KCSR as an additional insured, and report injuries to the railroad.

One other point related to the contract is also relevant. Since the contract was executed, Becon has filed suit against KCSR for tortuous interference with its contractual relationship with Pabtex. In that case, KCSR has sought to transfer venue based on the theory that, even though it did not sign the contract, it was a "transaction participant" in the contract. (Pl.'s Resp.Ex. 7). Although not dispositive, this is but one more fact evidencing KCSR's control over Pabtex.

Second, in negotiating the agreement between Pabtex and Becon, the KCSR representatives created an executive committee with powers of management over Pabtex. Although the contract provided that Pabtex would appoint the executive committee, the committee appointed at the time of Nichols' injury was appointed by Harvey, President of KCSR. The committee was comprised of two KCSR employees and one Becon representative—*there were no Pabtex officers on the committee.* Committee members were not paid by Pabtex nor was their expense allocated or charged to Pabtex.

The executive committee exercised powers over Pabtex and Becon that are normally reserved to the officers and management of Pabtex. These powers included the right to approve asset sales, budgets, solicitation of business, acquisitions of facilities and equipment, and contracts. It could even turn down business on behalf of Pabtex. Many of these powers were in fact exercised. The committee did not report to Pabtex in any way. It reported to Michael Haverty, President of KCSR, and officers of the "transportation" holding company. Finally, this kind of committee, one with broad-based powers of management, did not run any other KCSR affiliate.

Lou Van Horn, Vice President and Controller of Pabtex and KCSR, conceded that this committee represented a direct exercise of control by KCSR over both Becon and Pabtex and a marked departure from corporate law, where Pabtex officers should have conducted the day-to-day management of the company and reported to the directors, who in turn should have reported to the Pabtex shareholders. Moreover, Bill Graham, Senior Vice President of Marketing and Sales for KCSR, admitted that KCSR created the committee in an effort to retain control after bringing Becon in as a management company. KCSI did not want to lose their "investment" in Pabtex. Plaintiff is correct that the executive committee appears to have been created to serve KCSR.

Third, Pabtex and KCSR blurred their corporate identities, services and functions by proposing and entering into contracts with customers whereby one rate was quoted by Pabtex, or by Pabtex and KCSR jointly, to customers for transportation, loading, unloading, and storage, with the customer never knowing the amount allocable to transportation. Moreover, KCSR often marketed Pabtex to KCSR customers. Although much of this kind of business sharing is the result of a corporate relationship, according to evidence pre-

sented by Nichols, the distinction between the two entities blurred to extinction. This blending of corporate identities between Pabtex and KCSR goes to the heart of the alter ego and the single business entity doctrines. Often, customers simply did not know that they were dealing with separate companies.

Finally, there was commonality of directors and officers between Pabtex and KCSR at the time of the injury. The fact that two of the three Pabtex directors and four of the six Pabtex officers were also directors and officers at KCSR shows that there was at least the possibility that KCSR controlled Pabtex's corporate structure. Although this issue is never decisive, it is but one more indication that Pabtex and KCSR were more than corporate sisters.

Plaintiffs evidence is sufficient to disregard the corporate fiction on the basis of the alter ego theory. KCSR and Pabtex have common stock ownership. KCSR and Pabtex have common directors or officers. Because of the KCSR-controlled executive committee's authority over so much of Pabtex's daily operation, they arguably have common business departments. Although KCSR did not finance Pabtex, KCSI did and the impetus for creating the executive committee arose out of KCSI's desire to protect their investment in Pabtex. Pabtex could not protect itself because KCSR had already contracted away that right to Becon. Although KCSR does not pay the salaries and other expenses of Pabtex, the executive committee provides it the ability to control those payments. KCSR through its control over the executive board also was able to control what business Pabtex receives. Pabtex and KCSR shared property and equipment. The daily operations of Pabtex and KCSR are not kept separate. Finally, the directors and officers of Pabtex do not act independently in the interest of that company, and they take their orders from KCSR and KCSI in the latter's interest.

Although all the evidence does not point in one direction, a reasonable jury could return a verdict for Nichols on the alter ego theory of liability.

The same is true on the single business entity theory. Evaluated through the factors courts have considered in determining whether corporations have been maintained as separate entities, Plaintiffs evidence is sufficient to disregard the corporate fiction on the basis of the single business entity theory. For many of the same reasons that Pabtex was found to have been a common carrier by rail under the FELA, it and KCSR often blurred their identities beyond distinction. The evidence shows that allocation of profits and losses between the companies was often unclear or nonexistent. KCSR dominated Pabtex's executive committee, and there were many common officers between the companies. KCSR was responsible for the accounting and legal functions for Pabtex. Finally, although they did not share common business names, the frequent blending of marketing and sales activities effectively meant that Pabtex and KCSR services were offered under one roof. This evidence indicates that the operations of Pabtex and KCSR were so integrated as to result in a blending of the two corporate identities.

As in the case of the alter ego theory, although all the evidence does not point in one direction, a reasonable jury could return a verdict for Nichols on the single business entity theory of liability. KCSI and KCSR's motion for summary judgment on the alter ego and single business entity theories, therefore, is denied.

### D. Workers' Compensation Exclusion

▪ Nichols also seeks to recover under the TRLA and common law negli-

gence. Defendants assert that Nichols is barred from recovering under the FELA because he already accepted workers' compensation benefits from Pabtex. Pabtex contends that Nichols cannot recover under the TRLA or common law for the same reason. The Court rejects these arguments.

Defendants correctly point out that, under the Texas Workers Compensation Act ("TWCA"), "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." Tex.Lab.Code Ann. § 408.001(a) (Vernons 1995); *See also, Massey v. Armco Steel Co.,* 652 S.W.2d 932, 933 (Tex.1983). Nichols admitted that he never executed a written waiver of rights to receive workers' compensation benefits and never submitted a written election electing to claim or retain common law or statutory rights other than those available under the TWCA. *See* Tex.Lab. Code Ann. § 406.034 (Vernon 1995). Pabtex argues, therefore, that Nichols' common law negligence and TRLA claims are barred since he recovered under the TWCA. KCSI and KCSR contend that recovery against them is also barred under the exclusive remedy provisions of the TWCA.

 The first thing to conclude is that the TWCA does not bar recovery from any of the defendants under the FELA. The FELA preempts state law and provides the exclusive remedy for injury to or death of employees of common carriers by rail engaged in interstate commerce. *See Flores v. Coffield Warehouse Co.,* 683 S.W.2d 31, 32 (Tex.App.—Texarkana 1984), *cert. denied,* 474 U.S. 828, 106 S.Ct. 89, 88 L.Ed.2d 73 (1985) (workers' compen-

sation was appellant's sole ground of recovery where appellee was not a common carrier); *Rogers v. Consolidated Rail Corp.,* 948 F.2d 858, 860 (2d Cir.1991) ("It is now well-settled that Congress explicitly directed that FELA wholly preempt state-law remedies for railway employees injured in the course of employment when any part of that employment furthers interstate commerce."). Thus, the Court rejects Defendants' argument that the TWCA bars recovery under the FELA.

 But Pabtex also argues that Nichols' common law negligence and TRLA claims are barred since he recovered under the TWCA. The TWCA, as noted above, is the exclusive remedy for covered employees injured on the job. But the statute also excludes from its coverage (or provides an exemption for) those persons covered by a method of compensation established under federal law. *See* Tex.Lab.Code Ann. § 406.091(a)(2) (Vernon 1995). Thus, those subject to the FELA are guaranteed compensation because the federal statute preempts state statutes. *See Flores,* 683 S.W.2d at 32. Those railroad employees who are not covered under the FELA are implicitly covered under the TWCA. Because the latter are covered under the TWCA, they are not covered under the TRLA. *See Jones v. Rail Link, Inc.,* 11 F.Supp.2d 935, 937 (S.D.Tex.1998) ("[I]f the railroad employee is indeed receiving the 'exclusive' protections of the TWCA, then he cannot also pursue a TRLA claim"); *Nixson v. Mobil Oil Corp.,* 928 S.W.2d 245, 250–51 (Tex. App.—Houston [14th Dist.] 1996, no pet.) ("The Legislature ... expressed an intent not to allow railroad employees to benefit under both statutes when it excluded them under the Workers' Compensation Act."). However, the Court's finding that Nichols has presented summary judgment evidence that shows that Pabtex is a common

carrier by rail subject to the FELA precludes that conclusion in this case. If Pabtex is covered under the FELA, through the alter ego or single business entity doctrines, then the exemption provided for in section 406.091(a)(2) applies and the TWCA does not limit Nichols' recovery. If Nichols were to ultimately recover under his FELA or TRLA claims, of course, that recovery would be offset by any amounts he has received under Pabtex's workers' compensation plan. *See Freeman v. Norfolk and Western Railway Co.*, 596 F.2d 1205, 1208 (4th Cir.1979) (reducing any recovery under the FELA from amounts already recovered under the Longshoreman's and Harbor Workers' Compensation Act to prevent double recovery). Thus, because he has shown that a genuine issue of material fact exists on whether the FELA applies to Pabtex, the Court cannot say as a matter of law that Nichols is precluded from recovering under the TRLA.

KCSI and KCSR next contend that Nichols is equitably and judicially estopped from asserting a claim against them because Nichols claimed he was an employee of Pabtex, and made application for and received workers' compensation benefits under Pabtex's workers' compensation policy. The Fifth Circuit has not addressed this issue. But the issue is one of law and ripe for summary judgment.

To support their contention KCSI and KCSR cite *Barrera v. Roscoe, Snyder, & Pacific Railway*, 385 F.Supp. 455 (N.D.Tex.1973), *aff'd*, 503 F.2d 1058 (5th Cir.1974), *cert denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), and *Thate v. Texas & P. Ry. Co.*, 595 S.W.2d 591, 595 (Tex.Civ.App.—Dallas 1980, writ dism'd).

In *Barrera*, the plaintiff brought an FELA action against the railroad after having recovered workmen's compensation benefits from his employer, a subsidiary of the railroad. He did not claim to be an employee of the railroad. He instead sought recovery against the railroad for the subsidiary's negligence on the theory that the subsidiary was the alter ego of the railroad. The jury returned a verdict in favor of the injured worker and the district court granted the railroad's motion for judgment n.o.v. There were two grounds for the court's ruling. First, the court concluded that there was no evidence to support the alter ego contention. Alternatively, the court held that the plaintiff was estopped from asserting a claim against the railroad under the FELA since he had claimed under the TWCA. The court opined that the TWCA "provides the exclusive remedy for an employee covered thereby when his injuries are caused only by the negligence of his employer." *Barrera*, 385 F.Supp. at 463.

In *Thate*, the plaintiff was employed by Texas & Pacific Motor Transport Company to load and unload trailers on a flatbed railroad car supplied by the railroad. He filed a workers' compensation claim and later an FELA suit, alleging that he was a borrowed servant of the railroad at the time of the incident. Adopting the holding in *Barrera*, the court granted summary judgment in favor of the railroad. It concluded that no fact issue existed "concerning whether [the plaintiff] was an employee of the railroad because by his election to represent himself as an employee of the trucking company for purposes of receiving benefits under the [TWCA, he] is estopped from now claiming that he was an employee of the railroad for purposes of recovering under the FELA." *Thate*, 595 S.W.2d at 595.

Nichols counters *Barrera* and *Thate* by citing to *DeShong v. Seaboard Coast Line Railroad Co.*, 737 F.2d 1520 (11th Cir. 1984). In *DeShong*, the plaintiff was a

truck driver for Seacoast Transportation Company, a wholly owned subsidiary of Seaboard Coastline Railroad Company. He sustained an injury while coupling his truck to a railroad trailer and received benefits under the Florida Workman's Compensation Act. He then sought to bring an action against the railroad under the FELA. The trial court, relying on *Barrera*, granted summary judgment, concluding that the plaintiff was estopped from claiming he was the railroad's employee for FELA purposes. The Eleventh Circuit reversed, holding that the doctrine of estoppel did not apply because an FELA plaintiff can be the employee of more than one corporation.

This Court finds the reasoning of *DeShong* persuasive. *See Smoot v. New York Susquehanna and Western Ry. Corp.*, 707 F.Supp. 629, 632 (N.D.N.Y.1989) (noting that *Barrera* was "persuasively faulted" by *DeShong*). As in *DeShong*, the doctrine of estoppel is the foundation upon which KCSI and KCSR's claim rests.

■■■ Under the doctrine of equitable estoppel a party with full knowledge of the facts, who accepts the benefits of a transaction, contract, statute, regulation or order, may not subsequently take an inconsistent position to avoid the corresponding obligation or effects. *See Aetna Life Ins. Co. v. Bocanegra*, 572 S.W.2d 355, 356–57 (Tex.Civ.App.1978, writ ref. n.r.e.). "Thus, a plaintiff should not be permitted to assert formally the existence of one state of facts in a claim against one party and accept benefits in satisfaction of that claim, and then maintain an action against another party on the ground that the facts first asserted did not exist." *DeShong*, 737 F.2d at 1522. According to Defendants, that is what Nichols is trying to do. He applied for and accepted workers' compensation benefits from Pabtex's carrier. He now makes a claim against under the

FELA claiming that he was an employee of KCSR. There are several problems with this position.

First, Nichols' action against KCSI and KCSR does not arise out of his employment with those companies as separate companies. He alleges instead that there was no actual distinction between them and Pabtex. His claim, therefore, is not that he was a dual employee of Pabtex and KCSR; it is that he was employed by one company, Pabtex, which was either (1) a single business enterprise comprised of KCSR and Pabtex or (2) a "device" designed to exempt KCSI and KCSR from liability under the FELA. These claims are consistent with a claim of workers' compensation benefits Pabtex's employer.

Moreover, the Supreme Court has determined that a worker can be employed by more than one corporation. *See Kelley v. Southern Pacific Co.*, 419 U.S. 318, 324, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). In *Kelley*, the Court considered the case of an individual who was injured while he was employed by a trucking company which was a wholly-owned subsidiary of the Southern Pacific railroad. According to the Court, there are three methods whereby a plaintiff can establish his employment with a rail carrier for FELA purposes even while he is nominally employed by another. *Id.* One of those methods is by establishing that he is a "subservant of a company that was in turn a servant of the railroad." *Id.* In this case, Nichols contends that Pabtex is a subservent of KCSR by virtue of the alter ego or single business enterprise doctrines. *See Selser v. Pacific Motor Trucking Co.*, 770 F.2d 551 (5th Cir.1985); *Brankin v. CSX Transportation Inc.*, No. 94C4926, 1996 WL 627625, *4 (N.D.Ill. Oct.28, 1996). Therefore, as the *DeShong* court reasoned:

If, in an FELA action, the plaintiff could be an employee of both the wholly

owned subsidiary of a railroad and the railroad itself, then a representation that he is employed by the former is not necessarily inconsistent with a claim that he is employed by the railroad. Because inconsistency is the crucial element in the doctrine of estoppel, there is no basis for applying estoppel in this case.

*DeShong,* 737 F.2d at 1523. This reasoning is buttressed by the fact that although the plaintiff in *Kelley* had received workmen's compensation benefits from his trucking company employer, *see Kelley* at 321, 95 S.Ct. 472, after the remand, he prevailed in his FELA action against Southern Pacific. *See Hebert v. Southern Pacific Transportation Co.,* 429 U.S. 904, 97 S.Ct. 270, 50 L.Ed.2d 187 (1976) (Blackmun J., dissenting). Thus, if consistency is the requirement, then Nichols may proceed against KCSI and KCSR.

In addition, as the *DeShong* court noted, the *Barrera* decision cannot be viewed as binding precedent on the estoppel issue. *DeShong,* 737 F.2d at 1524; *Dillenburg v. Kramer,* 469 F.2d 1222 (9th Cir.1972) (summary affirmance without opinion has little precedential significance). Aside from any *stare decisis* concerns, *Barrera* is also distinguishable from this case. In that case, the plaintiff acknowledged that he was not an employee of the railroad and he did not assert that the railroad's negligence had caused his injuries. He, therefore, only had an FELA action if he could prove his employer was an alter ego of the railroad. In this case, on the other hand, Nichols does argue that according to the *Kelley* definition, he should be classified as an employee of KCSR under the FELA. Specifically, he contends that as a subservent of Pabtex, which is a subservent of KCSR under the alter ego or single business enterprise doctrine, he is an employee of KCSR. Thus, although this Court has

not ignored *Barrera,* it does not find its reasoning persuasive.

Defendants' motions on the TWCA estoppel and election theories, therefore, denied.

### III. Conclusion

For the foregoing reasons, Defendant Pabtex and Defendants KCSI and KCSR's Motions for Summary Judgment are DENIED.